**Gregory DIPAOLO Plaintiff,**

v.

**Steven MORAN; Neil A. Morris; Neil A. Morris Associates, P.C.; William McCaully; William Fox; Dale Richardson; Ron Howard Traenkle; Bensalem Township; Bensalem Township Board of Council; Heather Ody; William Maddock; Joseph Pilari; Joseph Szafran; Edward Kisselback; Joseph Digirolamo Defendant.**

No. CIV.A.99–5974.

United States District Court,
E.D. Pennsylvania.

June 27, 2003.

Brian M. Puricelli, Newton, PA, for Plaintiff.

Neil Alan Morris, Richard Raymond Morris, Neil Alan Morris Associates, PC, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

YOHN, District Judge.

Gregory DiPaolo ("DiPaolo") through his attorney, Brian Puricelli, Esquire ("Puricelli"), filed this action against fif-

teen defendants, among whom are Neil A. Morris, Esquire ("Morris") and Neil A. Morris Associates, P.C. ("law firm") (collectively "defendants"), alleging a multiplicity of claims against each for violations of plaintiff's rights under the United States and Pennsylvania Constitutions and Pennsylvania state law. Early on in this litigation, it became apparent that there was extensive bad blood between Puricelli and Morris involving not only this litigation, but other litigation in other courts. Presently, this court faces the issue of the amount and type of relief to which Morris and his law firm are entitled as a result of my imposing sanctions against plaintiff and Puricelli on July 11, 2000 pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Because the situation involves an element of personal animosity and is an unseemly dispute between lawyers, the court had hoped that the passage of time would enable the parties to resolve the dispute amicably. Regrettably, this has not occurred.

## Background

Plaintiff, Brian DiPaolo ("DiPaolo" or "plaintiff"), initially brought this suit, claiming that each of the fifteen defendants had violated his federal and state constitutional rights, as well as Pennsylvania state law, by illegally firing him from his position as a tenured Bensalem Township Police Officer. First Amend. Compl. (Doc. # 44). Plaintiff alleged that he was fired for refusing to answer questions during an interrogation following his arrest for involvement in a peeping-tom incident. *Id.* at ¶¶ 10–20 (Doc. # 44). Plaintiff alleged that Morris and his law firm had participated in these violations through numerous actions taken on behalf of and in their capacity as counsel for the Township. *Id.* at ¶¶ 49(e) & (i)-(r), 50–65, 75–79.

On February 8th and 24th of 2000, Morris and his law firm filed a request, followed by a motion, for sanctions concerning plaintiff's premature motion for default judgment, in which plaintiff had alleged that defendants had not responded to his complaint. Def. Mot. and Briefs for Sanctions I (Docs. # 17 & 21). In their motion for sanctions, however, defendants claimed not only to have filed a motion to dismiss the complaint, but that plaintiff had refused to withdraw the motion even after defendants informed him of their filing. Def. Mot. and Briefs for Sanctions I (Docs.# 17, 21, 27, 28). On March 6, 2000, plaintiff filed his answer with the court, Pl. Mot. Opposing Sanctions I (Doc. # 22), and, after reviewing the documents, I granted the motion and ordered sanctions against Puricelli only in the amount of $350.00. Ord. (Yohn, J., Mar. 10, 2000)(Doc. # 29). Alleging that plaintiff and Puricelli had yet to pay the previously ordered sanction, defendants brought a second motion seeking sanctions against plaintiff and his counsel on May 18, 2000. Def. Mot. and Brief for Sanctions II (Doc. # 40). Plaintiff's counsel filed an answer to this motion on May 22, 2000. Pl. Brief Opposing Sanctions II (Doc. # 41). The court granted defendants' motion and ordered Puricelli to pay a $100 fee should he fail to hand deliver a $350.00 check or money order to defendants' offices by 3 p.m. on June 2, 2000. Ord. (Yohn, J., May 24, 2000)(Doc. # 43).

In the interim, on March 8, 2000, Morris filed a motion for Rule 11 sanctions against plaintiff and Puricelli concerning the filing of the original complaint. Def. Mot. and Brief for Sanctions III (Doc. # 27). Plaintiff filed an answer and defendants then filed a reply. Pl. Brief Opposing Sanctions III (Doc. # 24); Def. Reply (Doc. # 28). On April 27, 2000, the court held extensive oral argument on various motions of all of the defendants in the action to dismiss the complaint and issued an order on May 4, 2000 setting forth the claims that plaintiff could pursue in an amended complaint,

provided it was filed within twenty days. Ord. (Yohn, J., May 4, 2000) (Doc. # 42). Those claims permitted included claims against Morris and his law firm. *Id.* Although the court never specifically ruled upon the motion for sanctions,[1] my decision to allow the filing of an amended complaint, which included claims against Morris and his law firm, effectively mooted the sanctions issue; had the claims been so frivolous as to warrant Rule 11 sanctions, the court would not have permitted plaintiff to file amended complaint against Morris and his law firm.

On June 16th and 26th of 2000, Morris filed a "supplemental motion and brief for sanctions," arguing that defendants were entitled to sanctions in the form of attorneys' fees pursuant to Rule 11 and 28 U.S.C. § 1927 because the first amended complaint lacked both factual and legal merit. Def. Mot. and Brief for Sanctions III (Docs. # 53 & 57). Morris filed an affidavit of service with reference to both the motion and the brief, stating that the documents had been served on June 16, 2000 and June 26, 2000 respectively. On July 11, 2000, I granted the motion against plaintiff and Puricelli in the form submitted by Morris because of Puricelli's failure to file a response. Ord. (Yohn, J., Aug. 4, 2000)(Doc. # 66).[2]

On August 6, 2000, plaintiff and Puricelli filed a motion for reconsideration of the July 11th order. Pl. Mot. and Brief for Reconsideration (Doc. # 69). Morris filed a response on August 15, 2000, and plaintiff filed a reply on August 19, 2000. Def. Resp. (Doc. # 72); Pl. Reply (Doc. # 80). Morris also filed an additional brief in opposition to reconsideration on Septem-

ber 13, 2000. Def. Brief Opposing Reconsideration (Doc. # 89). I conducted a hearing on September 14, 2000, during which Puricelli testified that he received neither the supplemental motion, filed on June 16, 2000 nor the first supplemental brief, filed on June 26, 2000. Thus, he argued that the sanctions order should be vacated. As is evident in my findings, however, after evaluating his testimony and demeanor, I found Puricelli lacking in credibility. Transcript of Sept. 14, 2000 Hearing at 66. First, I determined that a letter, authored by Puricelli and dated July 5, 2000, was a smoking gun, demonstrating that Puricelli had received the supplemental motion for sanctions despite his protestations to the contrary. *Id.* at 65. In that letter, Puricelli wrote that a response to "Morris' Rule 11 motion is forthcoming . . . ." Def. Mot. in Opposition to Reconsideration, Exh. E (Doc. # 72). At the close of the hearing, I noted that "[t]he motion that is at issue here was filed on June 16th and the supplemental brief was filed on June 26th, so . . . that sentence would fit quite nicely into [Puricelli's] preparing a response to the motion and to the brief." Transcript of Sept. 14, 2000 Hearing at 65 (Doc. # 93). Morever, the motion and brief at issue were sent in two separate mailings to a number of lawyers, and Puricelli was the only person who claimed that he did not receive service. Based on these findings, the court held that "the reasons set forth in the motion for consideration are invalid and therefore the motion for reconsideration is denied." *Id.* at 66. Thus, the court denied the motion for reconsideration, thereby upholding the July 11th order imposing sanctions by default on plaintiff and his

---

1. The court has no recollection of having the motion as an outstanding motion, and it did not appear on any of the motion lists prepared by the clerk's office. In addition, neither party called the motion to the court's attention or requested a ruling.

2. For some reason the clerk's office did not file the order until August 4, 2000. I do not know the reason for that delay and it is not consequential.

counsel. Ord. (Yohn, J., Sept. 15, 2000) (Doc. # 91).

At the conclusion of the hearing, the court noted, however, that although the violation of Rule 11(b) was established by default, it was not assessing the nature of the appropriate sanction pursuant to Rule 11(c) at that time. The determination of the specific remedy to which defendants were entitled as a result of plaintiff and Puricelli's sanctionable conduct was to remain open. *See id.* at 67 ("I will make a ruling on the remedy for this ... motion for sanctions ... after I've determined what should happen to the amended complaint.").[3] Nor could it, as one of the bases for that remedy could be the hours that defendants spent defending a complaint, that the court had held—albeit by default—was frivolous. Because defendants' motion to dismiss was still pending disposition, the court could not calculate the total amount of reasonable fees to which defendants might be entitled. The court, however, did note one specific caveat regarding the remedy, which was that while both plaintiff and his attorney would be liable for filing the amended complaint, any sanction caused by the failure to respond to defendants' final sanction motion and the resulting motion for reconsideration would fall squarely and only on Puricelli, who had not met his responsibility to respond to the motion.

On December 5, 2000, plaintiff moved to voluntarily dismiss his claims as to Morris and his law firm pursuant to Federal Rule of Civil Procedure 41(a). Pl. Mot. to Dismiss (Doc. # 108). The court granted plaintiff's motion on January 2, 2001, and,

as a result, never addressed the merits of plaintiff's complaint against the defendants. Ord. (Yohn, J., Jan. 2, 2001)(Doc. # 112). Six months later, the court dismissed the suit against the remaining defendants pursuant to Federal Rule of Civil Procedure 41(b), having been advised that the parties had settled the dispute amicably. Ord. (Yohn, J., June 18, 2001)(Doc. # 119). Although Morris filed an appeal to the Third Circuit, the appeal was withdrawn by order dated May 17, 2002, and notice of the withdrawal was filed with this court on May 20, 2002.

On June 14, 2002, following notice of withdrawal of the appeal, the court ordered the parties to brief the following issues: 1) Can *pro se* attorney litigants recover attorneys' fees under Rule 11 or § 1927 for self-representation?; 2) Do the claims for attorneys' fees and costs against both plaintiff and Puricelli survive dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a) or 41(b)?; and 3) Should plaintiff be encouraged to seek separate counsel in connection with the litigation of this motion? Ord. (Yohn, J., June 14, 2002)(Doc. # 131). It is the parties' response to this order that court now considers in the following memorandum and order.

## Discussion

### I. Sanctions and Jurisdiction

 Although plaintiff and his attorney argue that the court lacks jurisdiction to specify the type and amount of the appropriate sanctions after a case has been dismissed on its merits, the court is within its jurisdiction and discretion to do so.[4]

---

**3.** Indeed, the order that the court signed, which defendants prepared and which neither plaintiff nor his counsel contested at the time, did not specify the amount of fees to which defendants were entitled.

**4.** Plaintiff and his attorney also challenge the validity of the July 11, 2000 order pursuant to

Rule 60(b)(4) of the Federal Rules of Civil Procedure. As the court has already made plain, however, that rule is not applicable to the instant case. *See DiPaolo v. Moran,* —— F.Supp.2d —— (E.D.Pa.2003) (holding that Rule 60(b)(4) does not provide a basis pursuant to which the July 11, 2000 order might be vacated because the court had jurisdiction to

Because the imposition of sanctions is collateral to the merits of a case, the court has jurisdiction to impose sanctions even after a case has been substantively decided. As the Supreme Court made plain in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), "motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.' Thus, even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees." *Id.* at 395, 110 S.Ct. 2447 (citations omitted). The Court further held that because "the violation of Rule 11 is complete when [the offensive paper] is filed, a voluntary dismissal does not expunge the Rule 11 violation." *Id.* (citations omitted). Indeed, the Court stated that

[e]ven if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal. Moreover, the imposition of such sanctions on abusive litigants is useful to deter such misconduct. If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to 'stop, think, and investigate more carefully before serving and filing papers.'

*Id.* at 398, 110 S.Ct. 2447 (citations omitted); *see also Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 559–60 (3d Cir.1985) (noting favorably that "courts generally have recognized that there is retained jurisdiction to assess attorney's fees pursuant to 28 U.S.C. § 1927 (1982), within a reasonable time after a judgment on the merits in entered").

issue the order and, therefore, the order cannot be void).

Moreover, both Local Rule 7.1 and caselaw interpreting it (or rules like it) state that the court may issue a default judgment on a motion for sanctions. Local Rule 7.1 states that "any party opposing [a] motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief. In the absence of a timely response, the motion may be granted as uncontested ...." Local Rule 7.1(c)(GANN 2002). Nothing in this rule suggests that motions for sanctions should be treated any differently from any other motion. Whereas the rule distinguishes between motions generally and those seeking summary judgment, *see id.* (stating that "a summary judgment motion, to which there has been no timely response, will be governed by Fed. R.Civ.P. 56(c)"), it makes no such distinction regarding sanctions motions. Thus, were the court to adopt plaintiff's arguments, the court could "allow a party to concede an entire case by default while restricting the same party's ability to concede a motion for Rule 11 sanctions." *Geller v. Randi*, 40 F.3d 1300, 1304 (D.C.Cir.1994). This would be "absurd." *Id.*

Additionally, while plaintiff does not point to a single case or rule that stands for the proposition that sanctions may not be imposed via default, several courts have held that they may be so imposed. *See id.* at 1303–04 (holding that the applicability of a local rule analogous to our Local Rule 7.1 is in no way limited "in cases in which a party fails to respond to a motion for sanctions"); *Aziz v. Pennsylvania State University*, 1998 WL 964483 at *3 (E.D.Pa. Nov. 17, 1998) ("The motion [for sanctions] was served and filed in accordance with Rule 11(c), but remains uncontested. This alone would allow the Court to enter an award for sanctions. *See* Local Civil Rule 7.1(c)."); *Carbone v. General Accident Insurance, Co.*, 1996 WL 420427 at *2 (E.D.Pa July 25, 1996) ("Under Local Rule 7.1(c) 'in absence of a timely response, the motion may be granted as unopposed.' Therefore, the present motion for sanctions could be properly granted as unopposed.").

In sum, because plaintiff failed to respond to defendants' motion without valid explanation or excuse, the court's July 11, 2000 order was not inconsistent with local rules and, thus, was valid.

Although plaintiff cites *Johnson Chemical Co. v. Home Care Products, Inc.*, 823 F.2d 28 (2d Cir.1987) and *Foss v. Federal Intermediate Credit Bank of Saint Paul*, 808 F.2d 657 (8th Cir.1986) to support his argument that the court is without jurisdiction to now set the specific remedy for the already imposed sanctions, these cases either are no longer good law or do not support plaintiff's position. First, while the *Johnson* court did state that "a voluntary dismissal acts as a jurisdictional bar to further Rule 11 proceedings," the Supreme Court explicitly invalidated that holding in *Cooter*. *See Cooter*, 496 U.S. at 395, 110 S.Ct. 2447 ("In our view, nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal.");[5] *Chemiakin v. Yefimov*, 932 F.2d 124, 129 (2d Cir.1991) (recognizing that the "*Cooter & Gell* decision, which, in holding that the collateral sanctions issue could be adjudicated after a voluntary dismissal, clearly overruled *Johnson Chemical Co.* and its progeny").

Second, *Foss* only tangentially discusses sanctions. In that case, the district court had refused to allow plaintiffs to voluntarily withdraw their complaint. *Foss*, 808 F.2d at 659. That court then decided the case on the merits and imposed sanctions upon plaintiffs. *Id.* On appeal, the Eighth Circuit only addressed whether the district court erred by not permitting plaintiffs to withdraw their complaint. Because the court held that the trial court had so erred, the court did not discuss the merits of the imposition of sanctions. *Id.* at 660.

Plaintiff also relies on *Simmerman v. Corino*, 27 F.3d 58 (3d Cir.1994). In that case, however, the Third Circuit never stated that the district court was without jurisdiction to impose sanctions after the parties had taken an appeal on the merits. Rather, the *Simmerman* court applied the supervisory rule created in *Pensiero v. Lingle*, 847 F.2d 90 (3d Cir.1988). That rule states that motions for sanctions must be *filed* before the court renders a decision on the merits of case, and *sua sponte* judicial impositions of sanctions must be raised and resolved before the termination of the case. The court, however, specifically stated that "a Rule 11 motion is 'uniquely separable' and collateral from the decision on the merits. [Therefore,] district court[s have] jurisdiction to entertain [such post-appeal] motion[s] and impose sanction[s]." *Id.* at 98.

Regarding the supervisory rule, the motion for sanctions in this case was filed on June 16, 2000, well before the case was voluntarily dismissed on January 2, 2001. Moreover, those concerns of the Third Circuit which lead to the creation of the supervisory rule are not present here. First, the court has stated that one reason for the rule is to insure that "[s]anctions ... operate as instructional tools to deter parties and attorneys whose conduct has not met the requisite professional standards from continuing on their wayward course of conduct." *Prosser v. Prosser*, 186 F.3d 403, 406 (3d Cir.1999) (applying the *Lingle* rule in the context of sanctions imposed pursuant to the district court's inherent powers). Second, the *Lingle* rule seeks to conserve judicial energies. In the district court, resolution of the issue before the inevitable delay of the appellate process will be more efficient because of current familiarity with the matter. Similarly, concurrent consideration of challenges to the merits and the imposition of sanctions avoids the invariable demand on two separate appellate panels to acquaint themselves with the un-

---

**5.** While the *Cooter* Court only specifically addressed Rule 41(a), this language indicates that the holding would apply equally to Rule 41(b).

derlying facts and the parties' respective legal positions.

*Lingle*, 847 F.2d at 99.

In the instant case, the court—albeit by default—imposed sanctions on plaintiff and his counsel immediately after their sanctionable conduct came to the court's attention. As noted in the disposition of plaintiff's motion for reconsideration on September 15, 2000, the court's only hesitation has been in determining the amount or type of appropriate remedy for that conduct, which is reasonable under the circumstances as 1) defendants did not specify the amount of fees in their initial motion, and 2) at the time the sanctions motion was granted, the court had not yet disposed of the substantive merits of the case. Hence, the court needed additional time to seek and then review the parties' submissions regarding reasonable attorneys' fees and to consider the appropriate type of sanction. Nonetheless, the imposition of sanctions on July 11, 2000 placed both plaintiff and his attorney on notice of their wayward conduct.

Additionally, in most instances in which a court approves sanctions, the basis of the sanction is that the legal claim lacks substantive merit. Hence, it is most efficient in those circumstances to address the sanctions issues concurrent with or soon after addressing the merits. Here, however, the sanctions motion was issued by default. Thus, the merits of the substantive case are wholly separate from any determination regarding the sanctions. For this reason, the concerns regarding judicial efficiency are not as compelling as where the substance of a claim—or lack thereof—forms the basis of the sanction. Thus, in the instant case, the court has followed both the letter and the spirit of our Court of Appeals' supervisory rule.

In short, this court is acting within its jurisdiction and discretion by now specifying the type and amount of the remedy for those sanctions imposed on July 11, 2000.

## II. Pro se Attorney Litigants and Fees

■ Because the language of both Rule 11 and § 1927 implies 1) an attorney-client relationship and 2) the accumulation of fees, both of which are absent when an attorney represents himself, the court will consider attorneys' fees only for the time that Morris spent defending his law firm against the first amended complaint or the motion for reconsideration.

Rule 11 and § 1927 state that those attorneys' fees that have been reasonably incurred as a result of the sanctionable conduct *may* be imposed as an appropriate sanction. *See* Fed.R. Civ.P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) [6] has been violated, the court may, subject to the conditions stated be-

---

**6.** Subsection (b) of Rule 11 provides the substance of the Rule. It reads that

> [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal conten-

tions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R. Civ.P. 11(b)(WEST 2003).

low, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."); *id.* at 11(c)(2)("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."); 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess ... attorneys' fees reasonably incurred because of such conduct.").

Of the three Circuit Courts of Appeals that have addressed whether *pro se* attorney litigants may receive fees as a result of the sanctionable conduct of an opponent, two have held that the terms contained in Rule 11 and § 1927—or similar statutes—bar *pro se* attorney litigants from receiving fees for self-representation.[7] In *Massengale v. Ray,* 267 F.3d 1298 (11th Cir.2001),

the Eleven Circuit Court of Appeals held that "[b]ecause a party proceeding *pro se* cannot have incurred attorneys' fees as an expense, a district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a sanction." *Id.* at 1302–03. Moreover, it stated that " '[t]he word "attorney" generally assumes some kind of agency (that is, attorney/client) relationship. The fees a lawyer might charge himself are not, strictly speaking, "attorney's fees." ' " *Id.* at 1303 (quoting *Ray v. U.S. Dep't of Justice,* 87 F.3d 1250, 1251 n. 2 (11th Cir.1996).

Echoing this reasoning in the context of Rule 37 sanctions,[8] the Federal Circuit Court of Appeals has held that "one cannot 'incur' fees payable to onself, fees that one is not obliged to pay." *Pickholtz v. Rainbow Technologies, Inc.,* 284 F.3d 1365, 1375 (Fed.Cir.2002). The court continued, stating that "the word 'attorney' connotes an agency relationship between two parties (client and attorney), such that fees a lawyer might charge himself are not 'attorney fees.' " *Id.* (citing *Massengale,* 267 F.3d at 1303).

Approximately twenty years before *Massengale* and *Pickholtz* were decided, the Ninth Circuit in *Ellis v. Cassidy,* 625 F.2d 227 (9th Cir.1980) upheld an award of attorneys' fees to *pro se* attorney defendants pursuant to Section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–5(k)). Although the court articu-

---

**7.** Like many of its sister circuits, the Third Circuit has not yet had the opportunity to address this issue.

**8.** Federal Rule of Civil Procedure 37(a)(4)(A) allows sanctions for discovery violations. It states that

> If [a] motion [compelling discovery pursuant to this rule] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or

> attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R. Civ.P. 37(a)(4)(A)(WEST 2003).

536

lated many public policy reasons in support of its holding [9]—all of which were well-reasoned—the court never addressed the implication of the statutory term "attorney." The Supreme Court, however, in *Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), did analyze that term in the context of an award of attorneys' fees to a *pro se* attorney plaintiff pursuant to 42 U.S.C. § 1988.[10] In that case, the Court, citing Webster's Dictionary among others, stated that "the word 'attorney' assumes an agency relationship ..." and prohibited the award of attorneys' fees pursuant to § 1988 to a *pro se* attorney plaintiff. *Id. at* 435–37, 111 S.Ct. 1435; *see also Pitts v. Vaughn,* 679 F.2d 311, 313 (3d Cir.1982) (holding that pro se attorney litigants could not receive fees pursuant to § 1988). Thus, even if this court were bound by Ninth Circuit precedent, the validity of *Ellis* is questionable given the Supreme Court's decision in *Kay.*

While I concur with the Eleventh and Federal Circuit Courts of Appeals and, hence, hold that Morris is not entitled to fees generated as result of defending himself, I am nonetheless persuaded that he may be entitled to incremental fees incurred as a result of defending his law firm.[11] Put simply, by representing his law firm, Morris created an attorney-client relationship, thereby diminishing, if not eviscerating, the primary reasoning for the above cited circuit court cases. *See Schneider v. Colegio de Abogados de Puerto Rico,* 187 F.3d 30, 32 (1st Cir.1999) (holding that a *pro se* plaintiff attorney was entitled to fees pursuant to 42 U.S.C. § 1988 because he represented another plaintiff as well as himself, and the fees were essentially the same whether or not the attorney was a named plaintiff).

In short, while Morris may not receive fees for defending himself, the language of the statutes leads to the conclusion that he may be entitled to fees incurred for de-

9. Specifically the court reasoned that

[t]he award of attorneys' fees in this case furthers the underlying policy of discouraging frivolous and harassing litigation. The appellees have actually suffered pecuniary loss, since they have been required to take time away from their practices to prepare and defend the suit. Legal services have actually been performed.... Further, these appellees did not seek out a chance for pro se litigation to compensate for an inactive practice; they were forced to defend against frivolous claims made by a plaintiff who is apparently bent on endless litigation. *Ellis,* 625 F.2d at 230–31.

10. The text and interpretation of § 2000e–5(k) is virtually identical to 42 U.S.C. § 1988. *Compare* 42 U.S.C. § 2000e–5(k)(WEST 2003) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.") *with* 42 U.S.C. § 1988

(WEST 2003) ("In any action or proceeding to enforce a provision of [specified] sections ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...."); *see also* Francis Dougherty, Annotation, *Right of defendant in civil rights case to receive award of attorney's fees under Civil Rights Attorney's Fees Awards Act of 1976,* 1991 WL 741678, 104 A.L.R. Fed. 14, 26 (1991) ("Although § 1988 does not set forth any standard as to when a prevailing defendant is entitled to an award of attorneys' fees, the standard adopted by the Supreme Court in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), where the court was dealing with a defendant's right to attorneys' fees under Title VII (42 U.S.C.A. § 2000e–5(k)), has been virtually universally adopted by courts called upon to determine whether a defendant is entitled to attorneys' fees under 1988.").

11. This, of course, will require evidence concerning the owners, directors, and officers of the law firm and its fee arrangement with Morris, if any, related to this action.

fending his law firm to the extent that they are not included in the time spent representing himself.

### III. Plaintiff and the July 11, 2000 Order

Because neither the parties nor Puricelli has argued that plaintiff should be encouraged to seek separate counsel in connection with the litigation of the Rule 11 sanction,[12] the court will not do so.[13]

The court would like to clarify, however, that plaintiff is only subject to Rule 11 sanctions pursuant to the July 11, 2000 order. Section 1927 is specifically limited to "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof." 28 U.S.C. § 1927; see also Gaiardo v. Ethyl Corp., 835 F.2d 479, 484 (3d Cir. 1987) ("[B]y its terms [Section 1927] is not directed at parties."). As such, § 1927 cannot be applied to plaintiff, and the July

11, 2000 order only imposes sanctions on him pursuant to Rule 11.

Furthermore, the court notes that plaintiff himself would not be liable for any fee award or other sanction resulting from Puricelli's failure to respond to the motion for sanctions. Plaintiff was in no way involved with his attorney's lack of professional responsibility. As a result, any sanctions involving the litigation of the motion for reconsideration would be imposed only against Puricelli.[14]

### Conclusion

In short, the court is within its jurisdiction and discretion, despite dismissal of the case pursuant to both Rule 41(a) or 41(b) of the Federal Rules of Civil Procedure, to delineate the exact type and amount of the remedy for plaintiff and Puricelli's sanctionable conduct in this case. Moreover, while Morris may not receive fees for defending himself, it may be that he can do so for his work representing his law firm.

---

12. Indeed, Puricelli states in his brief that "Mr. DiPaolo has been encouraged to speak to and obtain other counsel regarding all issue [sic] that arose in the action. He has been in writing provided with the ethical conflict rules and he has in writing elected to use Mr. Puricelli." Pl. Br. in Resp. to Ct. Ord. at 14 n. 6 (Doc. # 133).

13. It should also be noted that the Supreme Court and the Third Circuit have held that "one who voluntarily cho[o]se[s an] attorney as his representative in [an] action, cannot [later] avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" Link v. Wabash Railroad Co., 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); see also Boughner v. Secretary of Health, Education, and Welfare, 572 F.2d 976, 978 (3d Cir.1978) ("[G]enerally a party is deemed to be bound by the acts of his attorney.").

14. In his response to the court's order, plaintiff also contends that defendants' supplemental motion was an improper pleading because 1) there is no authority under the rules for such supplemental motions for sanctions, 2) the court failed to provide plaintiff with safe harbor notice in addition to that provided by defendants, and 3) defendants' motion was requested both Rule 11 and § 1927 sanctions in violation of Rule 11's requirement that motions for sanctions brought pursuant to that rule must stand alone.

Assuming arguendo that plaintiff's first claim has merit, he has waived any challenge to defendants' motion by failing to file a response as I have found that he was, in fact, served with a copy of the motion. As regards his second contention, I see nothing in Rule 11 which requires that the court provide safe harbor notice to plaintiff; rather that duty falls to defendants. Lastly, although the request for Rule 11 sanctions must be by separate motion from the merits of the case, it would serve no purpose to require Rule 11 and § 1927 motions to be filed separately. Such a requirement would only result in multiplicity of pleadings. Thus, any error that exists is harmless.

Additionally, plaintiff need not be encouraged to seek separate counsel in connection with the litigation of the Rule 11 sanction as no one has presented such an argument.

The next step in this dispute will be to determine and impose the actual amount and type of sanctions. In so doing, our Court of Appeals instructs this court that while "a district court must impose sanctions once a violation of Rule 11 is found, ... the district court retains broad discretion in determining the 'appropriate' sanction under the rule." *Langer v. Monarch Life Insur., Co.*, 966 F.2d 786, 811 (3d Cir.1992). However, " '[w]hatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose.' " *Id.* (quoting *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 878 (5th Cir.1988)). Thus, in fashioning the proper remedy for this sanction, the court is cognizant that plaintiff voluntarily dismissed the amended complaint and, consequently, the court never reviewed any of its contents on the merits. For this reason, it may be appropriate to order non-monetary sanctions, such as reprimand, censure, or mandatory continuing legal education, or it may be appropriate to award attorneys' fees for Morris' representation of his firm during the period between the filing of the amended complaint and its voluntary dismissal by the plaintiff.[15] All of these issues, however, need to and will be resolved at a hearing on the specific nature and amount of sanctions to be imposed.

An appropriate follows.

### Order

And now, on this _____ day of June, 2003, upon consideration of the parties'

---

**15.** As stated *supra,* while both plaintiff and his attorney are liable for any damages that defendants incurred as a result of the filing the

briefs (Docs. # 132 and 133) in response to the court's order of June 14, 2002 (Doc. # 131), it is hereby ORDERED that:

1) It is within the court's jurisdiction and discretion to delineate the nature of the sanctions pursuant to Fed.R. Civ.P. 11(c)(2) after the action has been dismissed pursuant to both Rule 41(a) and 41(b) of the Federal Rules of Civil Procedure;

2) Although Neil A. Morris, a *pro se* attorney litigant, can not be awarded attorneys' fees for defending himself, he may be awarded attorneys' fees incurred for representing his law firm;

3) Gregory DiPaolo need not be encouraged to seek separate representation in connection with the litigation of sanctions; and

4) The court having determined that Rule 11(b) of the Federal Rules of Civil Procedure has been violated as a result of plaintiff's default, an evidentiary hearing to determine the nature of the sanction to be imposed pursuant to Fed.R. Civ.P. 11(c)(2) is scheduled for August 8, 2003 at 1:30 p.m. in Courtroom 14B.

---

amended complaint, only Puricelli is liable for the costs resulting from his failure to respond to defendants' final motion for sanctions.