[No. S156045. Jan. 15, 2009.]

MARY MUSAELIAN, Plaintiff, v.
WILLIAM L. ADAMS et al., Defendants and Respondents;
JOHN G. WARNER, Objector and Appellant.

**514**

COUNSEL

Law Office of John G. Warner and John G. Warner for Objector and Appellant.

Mark T. Clausen for Defendants and Respondents.

Cyrus Sanai as Amicus Curiae.

OPINION

**WERDEGAR, J.**—Code of Civil Procedure section 128.7 (section 128.7) authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers. Sanctions may include payment to the movant of attorney fees incurred as a consequence of the violation. (§ 128.7, subd. (d).) The issue here is whether section 128.7 allows an award of attorney fees to a party attorney who represented himself or herself in responding to a filing abuse. This issue is similar to one we considered in *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241,

902 P.2d 259] (*Trope*), where we concluded the phrase "attorney's fees" in Civil Code section 1717 does not include compensation for the time and effort attorneys expend representing themselves or for professional business opportunities lost as a result of self-representation. (*Trope*, at pp. 277, 292.) We reach the same conclusion here, holding section 128.7 does not authorize sanctions in the form of an award of attorney fees to self-represented attorneys.

## FACTS

Plaintiff Mary Musaelian is married to Andrew Musaelian. Joseph Reiter, represented by Attorney William L. Adams, brought suit against Andrew Musaelian and Andrew Musaelian's business, Attorney Legal Research (ALR), seeking damages for conduct relating to litigation between Reiter and one of ALR's clients. Reiter obtained default judgments against both Andrew Musaelian and ALR. Reiter then sought partial satisfaction of the judgments by means of a forced sale of a residence Andrew Musaelian owned jointly with plaintiff. Plaintiff sought to avoid the sale by filing a third party claim of ownership of the residence, but the superior court denied her claim. Plaintiff and Andrew Musaelian sought to protect their home by filing for chapter 13 relief in the United States Bankruptcy Court for the Northern District of California. Reiter filed claims against the bankruptcy estate to recover sums representing the judgments against Andrew Musaelian and ALR. The bankruptcy court dismissed the claim for the sum represented by the judgment against ALR, reasoning that claim could be satisfied only from ALR's assets, which did not include plaintiff's home. The Ninth Circuit Bankruptcy Appellate Panel affirmed.

Plaintiff, represented by Attorney John G. Warner, then filed this action against Reiter and Adams, seeking damages on theories of negligence, intentional infliction of emotional distress, abuse of process, slander of title, invasion of privacy and malicious prosecution, all based on Reiter's attempts to force the sale of plaintiff's home to satisfy the default judgment entered against ALR. Adams, representing himself and joined by Reiter, demurred on the grounds the first five causes of action were subject to the litigation privilege of Civil Code section 47, and the sixth cause of action, for malicious prosecution, lacked merit because the state court action had terminated in Reiter's favor. Adams and Reiter also moved under section 128.7 for sanctions including attorney fees against plaintiff and Warner.

The trial court sustained defendants' demurrers without leave to amend. It later granted the motions for sanctions, finding Reiter had been the prevailing party throughout the state court proceedings, no reasonable person or party could have believed plaintiff's lawsuit had merit, and it was clear the suit was

filed for an improper purpose to delay, harass, increase the cost of litigation or otherwise acquire a bargaining chip usable in the ongoing litigation between the parties. The court ordered plaintiff and Warner to pay $25,050 to Adams as "reasonable sanctions including attorney fees," a sum matching the amount of attorney fees sought by Adams. The Court of Appeal reversed the award of attorney fees to Adams, concluding that because Adams had represented himself, he had not "incurred" attorney fees for purposes of sanctions under section 128.7.

## DISCUSSION

■ California follows the "American rule," under which each party to a lawsuit ordinarily must pay his or her own attorney fees. (*Trope, supra,* 11 Cal.4th at p. 278; *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504 [198 Cal.Rptr. 551, 674 P.2d 253].) Code of Civil Procedure section 1021 codifies the rule, providing that the measure and mode of attorney compensation are left to the agreement of the parties "[e]xcept as attorney's fees are specifically provided for by statute."

■ Section 128.7 is such a statute. Subdivision (b) requires that parties and their attorneys certify that pleadings or other written matters presented to the courts have merit, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Subdivision (c) authorizes sanctions for a violation of subdivision (b). Subdivision (d) provides: "A sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, *an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred* as a direct result of the violation." (§ 128.7, subd. (d), italics added.)

■ "When construing statutes, our goal is ' "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." ' " (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919 [76 Cal.Rptr.3d 483, 182 P.3d 1027].) "We first examine the words of the statute, 'giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent.' " (*Ibid.*)

In *Trope, supra,* 11 Cal.4th 274, we examined the words "incur" and "attorney's fees," finding their ordinary and usual meaning implies an agency relationship inconsistent with self-representation. We were concerned there

with Civil Code section 1717, which provides in subdivision (a): "where the contract specifically provides that *attorney's fees and costs, which are incurred* to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.) We found the ordinary and usual meaning of the word "incur" is to "become liable." (*Trope*, at p. 280.) The ordinary and usual meaning of "attorney's fees," in both legal and general usage, is the consideration a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation. (*Ibid.*)

■ As section 128.7 was adopted before our decision in *Trope*, that decision could have had no influence on the Legislature's intent when it drafted and enacted section 128.7. Nevertheless, the usual and ordinary meaning of the words did not change between 1968, when Civil Code section 1717 was enacted, and 1994, when section 128.7 was added to the Code of Civil Procedure.[1] We find, therefore, that the inclusion of the words "incur" and "attorney's fees" in section 128.7 implies an agency relationship under which the client and the party are not one and the same, and out of which the attorney expects remuneration. Section 128.7 also identifies attorney fees as an expense, authorizing a court to impose sanctions in the form of "reasonable attorney's fees and *other expenses* incurred." (Italics added.) The word "expense" is associated with an obligation to pay: "something that is expended in order to secure a benefit or bring about a result." (Webster's 3d New Internat. Dict., *supra*, at p. 800.) A party who acts on his or her own behalf does not thereby generate an expense that the party has become obligated to pay. And although such a party may lose earnings he or she might have obtained but for devoting time to the litigation, the loss of time from other employment is a loss, not an expense.

■ Adams acknowledges the similarity in language between Civil Code section 1717 and Code of Civil Procedure section 128.7. He contends, however, that the construction of words in a statute awarding contractual attorney fees as an item of costs should not control their construction in a statute authorizing an award of attorney fees as a sanction. But unless there is evidence the Legislature had a contrary intent, logic and consistency suggest the same language in analogous statutes should be construed the same way. Adams's contention, moreover, is inconsistent with federal court decisions denying attorney fees as sanctions to self-represented attorneys. Section 128.7 was modeled almost word for word on rule 11 of the Federal Rules of Civil

---

[1] As of 1994, when section 128.7 was enacted, "incur" was still defined as to "become liable." (Webster's 3d New Internat. Dict. (1993) p. 1146.) "Fee" was defined as "compensation often in the form of a fixed charge for professional service . . . ." (*Id.* at p. 833.)

Procedure (28 U.S.C.),[2] making the views of the federal courts particularly pertinent. At least three federal courts, including two circuit courts, have concluded the phrase "attorneys' fees" in rule 11 implies an agency relationship between a client and an attorney such that the fees attorneys might charge themselves are not "attorneys' fees." (See *Pickholtz v. Rainbow Technologies, Inc.* (Fed.Cir. 2002) 284 F.3d 1365, 1375; *Massengale v. Ray* (11th Cir. 2001) 267 F.3d 1298, 1303; see also *DiPaolo v. Moran* (E.D.Pa. 2003) 277 F.Supp.2d 528, 536.)

Two California appellate court cases, however, have reached the opposite conclusion. In *Abandonato v. Coldren* (1995) 41 Cal.App.4th 264, 269 [48 Cal.Rptr.2d 429], the court distinguished *Trope, supra*, 11 Cal.4th 274, and upheld an award of attorney fees to a self-represented attorney as a sanction against the plaintiff for bad faith tactics under Code of Civil Procedure section 128.5.[3] In *Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 469 [112 Cal.Rptr.2d 119], a different panel of the same court upheld an award of attorney fees under section 128.7 to an attorney who had responded, in propria persona, to a filing abuse. Both courts identified a need to compensate parties who had been compelled to respond to bad faith tactics, concluding a construction of the statutory language disallowing an award of attorney fees to a self-represented attorney would create a separate and artificial category of litigants who would be inadequately protected against another party's sanctionable activities. (*Laborde*, at p. 469; *Abandonato*, at p. 269.)[4] The

---

[2] Rule 11, like section 128.7, authorizes courts to impose sanctions for filing abuses. In 1994, when section 128.7 was enacted, rule 11 provided, in language comparable to that in section 128.7, subdivision (d): "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." (Fed. Rules Civ.Proc., rule 11(c)(2), 28 U.S.C. [1993 amend.].) The California Legislature essentially sought to replicate rule 11 when it enacted section 128.7. (See *Goodstone v. Southwest Airlines Co.* (1998) 63 Cal.App.4th 406, 423 [73 Cal.Rptr.2d 655], citing Assem. Com. on Judiciary, 3d reading analysis of Assem. Bill No. 3594 (1993–1994 Reg. Sess.) as amended May 23, 1994, pp. 1–2 and Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3594 (1993–1994 Reg. Sess.) as amended Apr. 26, 1994, p. 2.)

[3] Code of Civil Procedure section 128.5, subdivision (a) provides: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ."

[4] In *Laborde v. Aronson, supra*, 92 Cal.App.4th 459, the court found support for its position in *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff* (S.D.N.Y. 1986) 638 F.Supp. 714, 726. (*Laborde*, at pp. 467–468.) However, *Pickholtz v. Rainbow Technologies, Inc., supra*, 284 F.3d 1365, *Massengale v. Ray, supra*, 267 F.3d 1298, and *DiPaolo v. Moran, supra*, 277 F.Supp.2d 528, were decided more recently than *Kramer*, two by higher courts, and all reach the opposite conclusion.

courts also were persuaded the considerations underlying an award of contractual fees under Civil Code section 1717 are not present when attorney fees are ordered as a sanction under either Code of Civil Procedure section 128.5 or 128.7.

While section 128.7 does allow for reimbursement of expenses, including attorney fees, its primary purpose is to deter filing abuses, not to compensate those affected by them. It requires the court to limit sanctions "to what is sufficient to deter repetition of [the sanctionable] conduct or comparable conduct by others similarly situated." (§ 128.7, subd. (d).) Subdivision (d) lists a number of sanctions the court may impose, only one of which relates to compensating the moving party for the time and effort of responding to a filing abuse. Even then, subdivision (d) speaks not to compensating a party for the *party's* time and effort, but only to reimbursing reasonable attorney fees or other expenses, and then *only* when "warranted for effective deterrence." (*Ibid.*)

The purpose of section 128.7—deterring filing abuses—will not suffer if attorney fees are not allowed to attorneys representing themselves. Section 128.7 provides the trial court with a wide range of options all of which are designed to deter filing abuses. These options include ordering penalties payable to the court. It follows that a party who engages in abusive filing practices will not avoid monetary sanctions simply because the opposing party is a self-represented attorney. The court also is entitled to act on its own motion, eliminating the possibility a transgressing party might escape sanctions should the injured party fail to file a motion because he or she will not recover attorney fees. (§ 128.7, subd. (c).) Nor does disallowing attorney fees to attorneys litigating in pro se create a separate and artificial category of litigant who will be inadequately protected against another party's filing abuses. Attorneys are not required to represent themselves but, like other litigants, can choose to engage attorneys to respond to bad faith tactics.

In *Trope*, we recognized awarding attorney fees to self-represented attorneys but not to other self-represented litigants "would be to hold that the time and opportunity that an attorney gives up when he chooses to litigate a case in propria persona are somehow qualitatively more important and worthy of compensation than those of other pro se litigants." (*Trope, supra*, 11 Cal.4th at p. 285.) This "would in effect create two separate classes of pro se litigants—those who are attorneys and those who are not—and grant different rights and remedies to each." (*Id.* at p. 277.) Such disparate treatment between attorney and nonattorney litigants would be viewed by the public as unfair, allowing only lawyer litigants to qualify for fee awards. " 'In our view, the public

perception of fairness in the legal system is of greater moment than a lawyer litigant's claim to an attorney fee award if he elects to represent himself.' " (*Id.* at p. 286.)

Adams suggests the problem of disparate treatment between self-represented attorneys and other self-represented parties could be obviated by construing section 128.7 to require or allow the court to compensate any self-represented litigant for the time and effort spent responding to filing abuses as an "expense." But as we have said, the phrase "expenses incurred" contemplates an obligation that a party has become liable to pay. Section 128.7 does not provide for compensation for time lost from other employment.

Adams also contends disallowing attorney fees to an attorney litigating in pro se is inconsistent with our decisions in *Lolley v. Campbell* (2002) 28 Cal.4th 367 [121 Cal.Rptr.2d 571, 48 P.3d 1128], where we reversed an order denying attorney fees under Labor Code section 98.2 to the Labor Commissioner after the commissioner had represented a party without charge; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr.2d 198, 997 P.2d 511], where we upheld an award of fees under Civil Code section 1717 to in-house counsel; and *Ketchum v. Moses* (2001) 24 Cal.4th 1122 [104 Cal.Rptr.2d 377, 17 P.3d 735], where we upheld an award of attorney fees under Code of Civil Procedure section 425.16, subdivision (c) to a party represented by an attorney under a contingency fee arrangement. Not so. In each case attorney fees were "incurred" in the sense that there was an attorney-client relationship, the attorney performed services on behalf of the client, and the attorney's right to fees grew out of the attorney-client relationship. We explained in *PLCM*: "There is no problem of disparate treatment; in-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interests and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer." (*PLCM*, at p. 1093.) Similarly, privately or publicly funded legal services providers representing indigent parties, or attorneys litigating on a contingency fee basis, are not representing their own personal interests or seeking remuneration for lost opportunities. In any event, these cases present special situations neither considered nor discussed in *Trope, supra*, 11 Cal.4th 274. (See *Lolley*, at p. 377.) They have no application when, as in *Trope* and here, a party is litigating his or her own case.

■ We hold therefore that an attorney who responds in pro se to a filing abuse may not recover sanctions under section 128.7 in the form of an award of attorney fees. *Laborde v. Aronson, supra*, 92 Cal.App.4th 459, and *Abandonato v. Coldren, supra*, 41 Cal.App.4th 264, are disapproved to the extent they are inconsistent with our holding here.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.