Filed 3/14/14  Guerra v. Young CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| FLORENCIO GUERRA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RICHARD YOUNG et al.,<br><br>    Defendants and Respondents. | E055456<br><br>(Super.Ct.No. RIC1107509)<br><br>**OPINION** |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Abiri & Szeto, Robert Abiri, and Kenneth H. Szeto for Plaintiff and Appellant.

Callahan, Thompson, Sherman & Caudill and Christopher J. Zopatti for Defendants and Respondents Richard Young and Pathways Family Counseling Services.

Law Offices of James R. Rogers, Keith E. Zwillinger, and Rachel H. Mills for Defendant and Respondent Yvette Chavez.

1

Plaintiff Florencio Guerra alleges that defendant Yvette Chavez carried out a court-ordered child custody evaluation of him, even though she was not legally qualified to do so.

We will hold that the trial court properly sustained demurrers by Chavez and the other defendants based on the absolute litigation privilege (Civ. Code, § 47, subd. (b)(2)).

I

FACTUAL BACKGROUND

The following facts are taken from the complaint and from matters of which defendants asked the trial court to take judicial notice.

Between January and March 2009, Yvette Chavez carried out a child custody evaluation of Guerra (commonly known as a 730 evaluation; see Evid. Code, § 730). At the time, Guerra was a party to litigation involving the custody of his daughter. In July 2008, the family law court had ordered Guerra to undergo the evaluation; it had appointed Pathways Family Counseling Services, Inc. (Pathways) as the evaluator. Chavez was an employee of Pathways. Richard Young, who was the Clinical Director of Pathways and Chavez's supervisor, assigned Chavez to perform Guerra's evaluation.

To perform the evaluation, Chavez was legally required to comply with certain education, training, experience, and continuing education requirements. She was also legally required to file a declaration in Guerra's custody case stating that she had complied with these requirements. In August 2008, she did file such a declaration. In

2

November 2008, however, her "certifications . . . expired." Thus, in January through March 2009, when she actually performed the evaluation, she was not qualified to do so.

In July 2009, in the midst of Guerra's custody trial, Chavez admitted in sworn testimony that she had failed to satisfy the requirements for performing the evaluation. "As a result of . . . [d]efendants' failure to maintain Chavez's licensure in good standing, . . . the court was forced to declare a mistrial." Guerra's resulting damages included the cost of a new child custody evaluation, legal expenses for a new trial, lost wages, travel expenses, medical expenses, and emotional distress.

II

PROCEDURAL BACKGROUND

Guerra filed this action in April 2011. He named as defendants Pathways, Young, and Chavez. He asserted seven causes of action: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) negligence, (6) negligence per se, and (7) negligent supervision (against Young and Pathways only).

Defendants promptly filed demurrers, on multiple grounds, including: (1) the litigation privilege (Civ. Code, § 47, subd. (b)(2)); (2) quasi-judicial immunity; and (3) the statute of limitations for malpractice actions against a health care provider (Code Civ. Proc., § 340.5).

After hearing argument, the trial court sustained the demurrers, without leave to amend, on these three grounds. It then entered judgment accordingly.

3

III

THE ABSOLUTE LITIGATION PRIVILEGE

Guerra contends that the trial court erred by ruling that the litigation privilege applied.

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to all publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

"[T]he privilege protects only against *communicative* acts and not against *noncommunicative* acts. [Citation.] 'Because the litigation privilege protects only publications and communications, a "threshold issue in determining the applicability" of the privilege is whether the defendant's conduct was communicative or noncommunicative.' [Citation.] However, 'if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . Stated another way, unless it is

demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies.' [Citation.]" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 956-957.)

Guerra argues that the gravamen of the action is the "failure to maintain Chavez's licensure in good standing," which is a "noncommunicative act."[1] He claims that the trial court was led astray by focusing on the first and second causes of action, for intentional and negligent misrepresentation; thus, it concluded that the entire action arose out of Chavez's alleged misrepresentations in her declaration, which were at least arguably

---

[1] Pathways argues that the complaint fails to allege any problem with Chavez's *licensure*. It is true that there is a distinction between Chavez's licensure and her qualifications to perform a child custody evaluation. A child custody evaluator may be a licensed physician, psychologist, marriage and family therapist, or clinical social worker; indeed, under certain circumstances, a child custody evaluator may even be unlicensed. (Fam. Code, § 3110.5, subd. (c); Cal. Rules of Court, rule 5.225(c).) Even if a person has an appropriate license, however, to qualify to do child custody evaluations, he or she must complete certain initial education, training, and experience requirements. (*Id.*, rule 5.225(d), (e), (g), (h).) Finally, after a person has qualified initially, he or she must complete certain continuing education and experience requirements to remain qualified. (*Id.*, rule 5.225(g), (i).) And, of course, he or she must keep his or her license in effect.

Here, the complaint alleges that Chavez's "certifications" expired in November 2008. It also alleges that she "had not undertaken sufficient training and/or coursework . . . ." Thus, it implies that the problem was a failure to keep up with the continuing education requirements. However, it also specifically alleges that defendants "fail[ed] to maintain Chavez's licensure in good standing . . . ." It is quite conceivable that the failure to meet continuing education requirements also affected Chavez's licensure, as many state licenses have continuing education requirements. Thus, the complaint adequately alleges that Chavez was *both* unlicensed *and* unqualified. Rather than focus on licensure, we will discuss the failure to maintain Chavez's qualifications, i.e., including but not limited to licensure.

5

communicative acts. In our view, however, it is Guerra who has gone astray, by treating Chavez's declaration as the *only* relevant communicative act.

Certainly with regard to the first and second causes of action, it is appropriate to focus on the declaration. These allege that defendants represented "to the court handling the [c]ustody [t]rial in [Chavez's] [d]eclaration" that Chavez was qualified to perform the evaluation, and that this representation was false. Thus, the gravamen of these causes of action is a communicative act. Indeed, it is an act of communicating directly with the court by filing a document in ongoing litigation. It is hard to imagine an act more clearly within the litigation privilege.

Guerra nevertheless argues that the action as a whole arises out of the failure to maintain Chavez's qualifications. He points out that, even after Chavez filed her declaration, if only she had maintained her qualifications, he would not be suing. Actually, though, the tort was not that she filed the declaration, and it was not that she failed to maintain her qualifications — *it was that she proceeded to perform the child custody evaluation*. She could have avoided being sued simply by not doing the evaluation, for any reason (e.g., because she recognized the problem and stepped aside or did not recognize the problem but decided to leave the profession).

Thus, the relevant communicative act was the child custody evaluation itself. The order appointing Chavez required her to file a copy of her evaluation report with the court; it also provided that the report "shall be received into evidence without foundation, and over any hearsay objection . . . ." And eventually, Chavez did testify. These are all

6

acts of communicating directly with the court in litigation. As such, they fall squarely within the protection of the privilege.

In *Gootee v. Lightner* (1990) 224 Cal.App.3d 587, the plaintiff and his ex-wife stipulated to have the defendants perform a child custody evaluation. Defendant Lightner performed the evaluation, prepared a report, and testified in court. The plaintiff then sued, alleging that Lightner had negligently performed tests and intentionally or negligently destroyed raw test data. (*Id*. at pp. 589-590.) The appellate court held that the defendants were entitled to summary judgment based on the litigation privilege. (*Id*. at pp. 591-596.) It stated: "Because the gravamen of appellant's claim relies on negligent or intentional tortious conduct committed by respondents in connection with the testimonial function, we conclude the absolute privilege bars civil lawsuits (other than for malicious prosecution) seeking to impose liability on respondents for such misfeasance." (*Id*. at p. 591.)

The court rejected the argument that the tortious conduct was "outside the protective ambit of the privilege because it occurred independently from the testimonial aspects of respondents' undertaking." (*Gootee v. Lightner*, *supra*, 224 Cal.App.3d at p. 593.) It explained: "[A]ppellant cites no pertinent authority for the proposition that 'preparatory activities' committed in conjunction with or anticipation of privileged testimony give rise to independent tort claims. Instead, the authorities provide to the contrary." (*Id*. at p. 593.) "[T]he protective mantle of the privilege embraces not only the courtroom testimony of witnesses, but also protects prior preparatory activity leading

7

to the witnesses' testimony." (*Id*. at p. 594, fn. omitted; see also *Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 461, 463-465 [litigation privilege barred action for breach of contract, malpractice, defamation, invasion of privacy, conversion, interference with contract, and intentional infliction of emotional distress arising out of 730 evaluation], disapproved on other grounds in *Musaelian v. Adams* (2009) 45 Cal.4th 512, 520.)

Here, as in *Gootee*, the entire action arises out of alleged misconduct in the course of performing a child custody evaluation. Maintaining Chavez's qualifications was simply one of the "preparatory activities" that were necessary if Chavez was going to submit her report or testify in court. Hence, the entire action is barred by the litigation privilege.

Guerra argues that he should have been given an opportunity to amend his complaint. Once again, however, this argument presumes that the relevant communicative act is the filing of the declaration; thus, Guerra offers to delete any reference to the declaration from his complaint. He also offers to plead that the failure to maintain Chavez's qualifications constituted a breach of contract and a violation of the Unfair Business Practices Act (Bus. & Prof. Code, § 17200). These causes of action, however, would still arise out of Chavez's performance of the child custody evaluation. Thus, for the reasons already stated, these amendments would not avoid the litigation privilege. (*Laborde v. Aronson*, *supra*, 92 Cal.App.4th at pp. 461, 463-465 [litigation privilege bars breach of contract claim arising out of 730 evaluation]; see also *Feldman v.*

8

*1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1494-1498 [litigation privilege

bars breach of contract claim and Unfair Business Practices Act claim].).[2]

We therefore conclude that the trial court properly sustained the demurrers without

leave to amend.  Because we are holding that the litigation privilege applied, we need not

discuss the alternative grounds for the demurrers (i.e., quasi-judicial immunity and the

statute of limitations).

---

[2]    We do not mean to suggest that a person who hires an expert witness can never sue the expert for breach of contract.  "[T]he litigation privilege does not apply to prevent a party from suing his own expert witness, even if that suit is based upon the expert's testimony." (*Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1144, fn. omitted.)  But "[i]n this regard, an individually retained expert must be distinguished from a jointly retained, or court appointed, expert.  The litigation privilege has been held to apply to jointly retained or court-appointed experts. [Citations.]" (*Ibid*.)  Here, the record conclusively establishes, as a matter of judicial notice, that Chavez was a court-appointed expert.

## IV

## DISPOSITION

The judgment is affirmed.  Defendants are awarded costs on appeal against Guerra.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
                                                        J.

We concur:

HOLLENHORST
            Acting P. J.

McKINSTER
                    J.

10