Filed 6/15/15  Ledesma v. JP Morgan Chase CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GLEN LEDESMA, et al., | B254614 |
| Appellants, | (Los Angeles County |
| v. | Super. Ct. No. SC121080) |
| JP MORGAN CHASE, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Allan J. Goodman, Judge.  Affirmed.

Stephen F. Lopez for Appellants.

Attlesey | Storm and Suzanne S. Storm for Defendants and Respondents SFS Equities, LLC and Roxcar, LLC.

_____

As a sanction under Code of Civil Procedure[1] section 128.7, subdivisions (b)(1) and (b)(3), the trial court struck plaintiff Glen Ledesma's complaint with prejudice and ordered Ledesma and his attorney, Joseph DeClue, to pay sanctions in the amount of $60,000. Ledesma and DeClue appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

After years of litigation concerning the foreclosure of Ledesma's property on Roxbury Drive in Beverly Hills, Ledesma filed the instant suit on July 25, 2013, against JP Morgan Chase Bank, SFS Equities, LLC and Roxcar, LLC. Ledesma asserted claims for wrongful foreclosure and a violation of Civil Code section 2923.6, and sought to quiet title to real property.

A. Initial Motion for Sanctions

In September 2013, defendants SFS Equities and Roxcar filed demurrers to the complaint and moved for sanctions in the amount of $75,000 against Ledesma and DeClue pursuant to section 128.7. Prior to the scheduled hearing, the court issued a tentative ruling indicating its preliminary conclusion that the motion was meritorious; that Ledesma and DeClue each violated section 128.7, subdivisions (b)(1) and (b)(3); that Ledesma was forum-shopping, engaging in litigation for the purpose of harassment and delay, and had committed perjury; that it was "undeniable" that Ledesma had lied under oath; and that any reasonable attorney would have withdrawn the complaint. The court stated its intent to impose $35,080 in monetary sanctions against Ledesma and DeClue and to strike the complaint with prejudice. At the hearing, however, it became apparent to the trial court that the motion was improper due to a notice defect. The court therefore denied the motion without prejudice.

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

B.  Renewed Motion for Sanctions

SFS Equities and Roxcar subsequently filed a renewed motion for sanctions, supported by the following evidence:  In June 2007 Ledesma obtained a loan in the amount of $3,375,000 from Washington Mutual Bank relating to a property on Roxbury Drive in Beverly Hills; the loan was secured by a deed of trust recorded in the Los Angeles County Recorder's Office as Instrument Number 20071527179.  Ledesma had admitted in prior litigation that he defaulted on this loan on or about September 2008.  After Washington Mutual failed, JP Morgan Chase acquired certain assets of Washington Mutual, including Ledesma's loan.

1.  First Wrongful Foreclosure Action

In December 2009 Ledesma filed suit against JP Morgan Chase and another defendant, Quality Loan Service Corporation (Super. Court. No. SC105901), alleging causes of action for wrongful foreclosure of the Roxbury property and injunctive relief; breach of contract; breach of the implied covenant of good faith and fair dealing; and fraud.  JP Morgan Chase filed a motion for summary judgment.  Ledesma dismissed the action without prejudice on the date that had been set for the hearing on the summary judgment motion.

2.  Second Wrongful Foreclosure Action

On May 13, 2013, the same day that a trustee's sale was set for the Roxbury property, Ledesma filed case number BC508624 against JP Morgan Chase, SFS Equities, and another defendant.  Ledesma alleged wrongful foreclosure on the Roxbury property, asserted promissory estoppel, and sought declaratory relief, injunctive relief, and an accounting.  Ledesma sought a temporary restraining order to prevent the foreclosure sale of the property that day, claiming that JP Morgan Chase failed to comply with Civil Code section 2923.6 concerning his loan modification application.  The temporary restraining order was denied, and the court wrote in its ruling that the defendant had presented

3

evidence that Ledesma "has been in default for approximately five years and it is not a material violation of the [H]omeowner's [B]ill of [R]ights when plaintiff waits five years to make an application for a loan modification." Ledesma, through DeClue, then voluntarily dismissed the action without prejudice on June 24, 2013.

### 3. Unlawful Detainer Action

The Roxbury property was sold to Roxcar at a trustee's sale on May 13, 2013. Roxcar then filed a complaint for unlawful detainer against Ledesma. On July 17, 2013, after a court trial, the court found in favor of Roxcar and against Ledesma regarding the Roxbury property and awarded damages of $38,400. Counsel for Roxcar in the unlawful detainer action supplied a declaration that described the events in that action. She explained that while the case "was a simple post-foreclosure eviction," Ledesma and his son "tried all the tricks possible to delay the eviction." First, Ledesma filed no answer and allowed a default to be taken. On the eve of being locked out, Ledesma filed an ex parte application to set aside the default. This application was denied. "Upon the denial of the ex parte," counsel declared, "Ledesma filed a bankruptcy which was later dismissed." After that, "Ledesma filed another 4 ex parte[]s, on July 1, 2013, July 11, 2013, July 15, 2013 and again after trial and judgment being entered on July 18, 2013." Ledesma's request to stay execution on the writ and judgment after trial was also denied. The eviction process and unlawful detainer action cost Roxcar $4,555, according to the unlawful detainer counsel.

### 4. Bankruptcy Proceedings and Third Wrongful Foreclosure Action

In June 2013, Ledesma, represented by DeClue, filed for personal bankruptcy. On July 9, 2013, Ledesma filed an adversary proceeding in bankruptcy court in his personal bankruptcy action, United States Bankruptcy Court Case Number 8:13-bk-15322-ES. The complaint alleged causes of action against JP Morgan Chase, SFS Equities, Roxcar, and another defendant for wrongful foreclosure; violation of Civil Code section 2923.6; quiet title; cancellation of instruments pursuant to Civil Code section 3412; violation of

4

the Truth in Lending Act (15 U.S.C. § 1641, subd. (g)); violation of the Business and Professions Code section 17200 et seq.; slander of title; turnover of property of the estate (11 U.S.C. § 542); equitable subordination (11 U.S.C. § 510, subd. (c)); and disallowance of the defendants' claims.

The bankruptcy court dismissed Ledesma's bankruptcy petition and adversary action without prejudice on August 23, 2013, because they had been filed in violation of the court's prior order that no bankruptcy action concerning the property be filed without leave of court. In a July 16, 2013, hearing prior to the court's order, DeClue acknowledged that the court had previously "impose[d] a two-year bar on bankruptcy proceedings involving the Roxbury property." The court said, "[T]his is why the order was originally imposed. [¶] There is a long history of bankruptcy abuses. There's a long history of fractional interest[s] being transferred back and forth, 25 percent to this entity, 25 percent to that entity, back and forth, forth and back . . . ."

The bankruptcy court advised DeClue that this pattern of bankruptcy abuse went back years, to "I don't know if it's 2007 or 2009, we have Mr. Ledesma, probably the original person that started all these 25 percent fractional transfers, and, you know, the bankruptcies span different divisions, different LLC's at different times . . . and if you add up all the bankruptcies, all of the bankruptcies—and they're all somehow interrelated, you know. The new ones I'm seeing now are these new properties that are new to me anyway, properties in New York, but these other properties, you know, Roxbury, Huntly, West Knoll, they've all been tied up at different times in a number of different bankruptcies, much to the frustration of creditors. [¶] None that I recall of these bankruptcies have ever been successful. If you look at all of them over the time when they first started—I don't know if it was 2009 when they first started or 2010—there could be as many as 10 bankruptcies involving all these properties at different times, none of them successful, all fractional interest."

The bankruptcy court explained that in the context of another property subjected to the fractional interest scheme it had "painstakingly" traced the course of the fractional interest transfers and bankruptcies, and that ultimately the parties had agreed on a

5

dismissal accompanied by "pretty onerous terms" based on "the history of the case, the interrelation between the Ledesma[]s, the interrelation between the LLC's that had been created, it transferred back and forth." The court said that it had made sense to impose "as strict an order as possible to prevent more of the abuses that had been occurring." Ledesma, the court observed, "was part of this process because he—he was the original transferor" of a fractional interest. The court said, "[T]his is a case with long legs that appear to be mired in bankruptcy abuse that precede[s] this case."

DeClue told the bankruptcy court that he "agree[d] with the Court's characterization regarding the bankruptcies." DeClue agreed that "there are things that were done that don't make any sense." He continued, "They certainly weren't helpful. There was no way that they could have been helpful. They could only have caused problems."

The bankruptcy court pointed out that Ledesma's prior counsel had requested relief from the order barring further filings, but that he had done so on an emergency basis when any emergency was "self-created." The court had denied the emergency request without prejudice to a request made on regular notice, but no regular noticed request was made. Instead, DeClue filed the new case and was now belatedly seeking to ratify it. The court concluded that the new filings had been made "in complete disregard" of prior orders and was therefore improperly filed. Should Ledesma wish to file again, the court advised, he would have to seek leave to file in the proper case and would "have to present a case on why this is not going to be another bad faith filing." The court specifically advised DeClue that he should examine the history of the other case in which the filing order was made, because "in the context of the denial of the approval of the disclosure statement" the court went through "what the disclosure statement did not disclose, and it has—it has a lot of the history of these prior bankruptcies, starting in 2010, identifying the case numbers, the properties that were involved—or should I say the Debtors and the properties, what happened, 180-day bars. There were three 180-day bars that were imposed. I think that was—had to do with some L.A. cases. [¶] It shows that there were four dismissals with 180-day bars. This is before we get to the Knoll

6

West case [in which the filing requirement order was imposed]. So there's a pretty—pretty good summary there of that tentative ruling as to what was taken into account at the time that it was ultimately—the case was ultimately dismissed." "So again," the bankruptcy court advised DeClue, "I leave it to you to determine whether or not you think an emergency or some sort of expedited hearing [need] exists, but you're going to have to make a really good case for why it should be done on an expedited basis and what's different about this case than all the other eight, nine or 10 cases that have previously been filed and dismissed and were completely unsuccessful and found to have been filed in bad faith."

Finally, the bankruptcy court explained, "This is not anything new. This has been going on forever. This has been going on since like 2009, 2010. This is now 2013. So he's had this—he and Jonathan Ledesma and all these LLC's have had these rolling bankruptcies going on since 2010. That's why if I seem a little insensitive to this it's because this isn't their first time at the rodeo here. I mean, this has been going on for some time, and, you know, he's wanting now to come in and say, 'I'm wearing the white hat,' but you know, when you've been part of a process that has just been filing bankruptcy after bankruptcy and, you know, leaving a trail behind of bars and restrictions and 180 days and seeking leave to—to refile and having that denied . . . you know, there isn't a great track record here." In dismissing the bankruptcy case and the adversary proceeding, the bankruptcy court expressly retained jurisdiction to consider and determine any creditor motions for sanctions in connection with the filing of the case.

Roxcar's bankruptcy attorney declared that Ledesma and his counsel had engaged in "all manner of fairly sophisticated 'tricks' involving numerous bad faith bankruptcy filings that were initiated in violation of specific bankruptcy court orders." Counsel reported that to date Roxcar had been successful in all the bankruptcy litigation: "With regard to each proceeding in which I represented Roxcar, LLC, concerning Mr. Ledesma and his related entities Roxcar, LLC was successful. With regard to all efforts and proceedings in which Mr. Ledesma and his counsel sought relief as against Roxcar, LLC, Mr. Ledesma and his counsel were always unsuccessful. It appears that virtually all of

7

Mr. Ledesma's efforts were undertaken in attempts to preclude the bringing and/or concluding of unlawful detainer proceedings." These victories, however, cost Roxcar: counsel declared that in the bankruptcy proceedings Roxcar had incurred $30,730 in attorney fees and $947.46 in costs as of July 2013, with additional costs that were not yet quantified having been incurred in the August 2013 bankruptcy proceedings.

### 5. Fourth Wrongful Foreclosure Action

On July 25, 2013, Ledesma, represented by DeClue, filed this action asserting causes of action for wrongful foreclosure, violation of Civil Code section 2923.6, and to quiet title. In this verified complaint, Ledesma alleged that he entered into a promissory note with Washington Mutual Bank that was secured by a deed of trust against the Roxbury property. He then alleged that "the signatures and initials in the recorded Deed of Trust and related Adjustable Rate Rider are neither his signature nor his initials." He further alleged that JP Morgan Chase never owned the loan. SFS Equities and Roxcar asserted that these allegations were in conflict with a declaration Ledesma filed in a prior lawsuit in which he stated, "On June 16, 2007, I originally financed the Roxbury Property by personally executing a promissory note for the sum of $3,375,000.00 and a deed of trust under which I was designated as the borrower, Washington Mutual Bank was designated as the lender, and Quality Loan Service Corp. was designated as the trustee."

SFS Equities and Roxcar argued to the trial court that the complaint was presented for the improper purposes of delay and harassment and that the causes of action asserted were frivolous and lacking evidentiary support. They requested sanctions against Ledesma and DeClue in the amount of $75,000. SFS Equities and Roxcar supported their sanctions request with evidence that Ledesma's filings had caused them to incur approximately $30,000 in attorney fees and that it was estimated that further work on the present motion was anticipated to total $5,100.

C. Opposition to Renewed Motion for Sanctions

In opposition to the renewed motion for sanctions, Ledesma and DeClue claimed that a number of assertions made by SFS Equities and Roxcar in their motion were false. They claimed that the causes of action did in fact have merit and were supported by both facts and law. Finally, they asserted that SFS Equities and Roxcar were impermissibly attempting to recover costs related to the bankruptcy litigation.

By declaration Ledesma denied that his prior lawsuits were dismissed solely for the purpose of delay of the foreclosure proceedings. He asserted that he dismissed his first civil case (Case No. SC105901) based on his understanding that JP Morgan Chase would deal with him in good faith concerning a loan modification. When JP Morgan Chase "refused to do so," Ledesma claimed, he was forced to again pursue legal action. The second wrongful foreclosure case (Case No. BC508624), Ledesma declared, was not dismissed because he was denied an injunction or was shopping for a new judge; instead, "I dismissed this case because of information learned after the case was filed. The information acquired after the filing of the case changed the character of the lawsuit and forced me to name an additional defendant."

Ledesma contended that his "only goal has been and continues to be to deal with the true owner of my loan in good faith, working to a modification of the loan." He denied perjuring himself, clarifying that he believed that the deed of trust he signed was not the one that was recorded. He also denied filing ten bankruptcies and stated that he had filed "only one personal bankruptcy." Ledesma did not acknowledge the other bankruptcy proceedings except to acknowledge that his personal bankruptcy case had been dismissed because of a ruling that he needed permission to file a bankruptcy "based upon a ruling of another bankruptcy case."

DeClue denied dismissing Ledesma's second wrongful foreclosure civil suit (Case No. BC508624) "solely for the purpose of delay of foreclosure proceedings, eviction proceedings, or because [an application for a temporary restraining order] was denied." He claimed that he dismissed the suit, which had been filed by Ledesma's prior counsel,

9

because it did not include claims he knew to be well-founded and it did not include Roxcar as a defendant. He asserted that these factors "made it more appropriate to dismiss that case without prejudice, rather than move the court for leave to amend."

D. Ruling on the Renewed Motion for Sanctions

The court heard the motion for sanctions on January 13, 2014. The court concluded that the extraordinary relief of sanctions and striking the complaint was appropriate due to "extraordinary circumstances." The court began by observing that SFS Equities and Roxcar had complied with the safe harbor provisions of section 128.7, subdivision (c)(1) but that Ledesma "failed to withdraw his complaint (notwithstanding the Court's written and oral statements at the October 17, 2013 hearing regarding the bad faith of Plaintiff and his counsel)."

The court next concluded that Ledesma and DeClue each violated section 128.7, subdivisions (b)(1) and (b)(3). The court explained, "The moving and reply papers detail, at length, a troublesome pattern of forum-[]shopping, harassment, and delay by Plaintiff and attorney De[C]lue in an improper effort to stymie foreclosure and post-foreclosure disposition of the subject real property, which misconduct even included serial bankruptcy filings and a violation of a Bankruptcy Court order. The moving and reply papers also unquestionably establish that Plaintiff lied under oath in the verified complaint in this action by asserting that he did not sign the deed of trust which is the subject of this action (Complaint, para. 10)–and that any reasonable attorney would have realized this and withdrawn the complaint." The court was not persuaded by Ledesma and DeClue's accounts of their actions as being motivated by proper litigation purposes. The court characterized Ledesma and DeClue's responses to these arguments as "less than convincing. Indeed, Plaintiff's attempts to dismiss Defendants' overwhelming evidence of forum-shopping, harassment, delay, and perjury smack of sophistry and misdirection."

The trial court concluded that monetary sanctions were appropriate "in light of the outrageous conduct by Plaintiff and his counsel . . . ." The court found that an award of

attorney's fees to SFS Equities and Roxcar in the amount of $50,000 would deter Ledesma and DeClue from filing similar actions in the future and from "engaging in the types of unprofessional conduct demonstrated by attorney De[C]lue in litigating this action." The court explained that it determined the amount of sanctions based on its "43+ years of legal experience, including 19+ years as a bench officer, its familiarity with the action, [and] the goal of effecting deterrence rather than punishment in imposing sanctions under [section] 128.7." Specifically, the court noted, "The amount [of sanctions] is larger than that which the Court intended to impose in connection with the prior iteration of the motion because, puzzlingly, *Plaintiff chose to maintain this action notwithstanding the Court's written and oral statements at the October 17, 2013 hearing regarding the bad faith of Plaintiff and his counsel.* This strongly indicates that severe sanctions are necessary in order to deter such future conduct."

The court further ordered that Ledesma and DeClue pay $10,000 in sanctions under section 128.7, subdivision (d) to the superior court for the purpose of "deterring Plaintiff, attorney De[C]lue, and others from filing similar actions in the future, and engaging in the types of unprofessional conduct demonstrated by attorney De[C]lue in litigating this action." Finally, the court struck the complaint with prejudice. The court also noted for appellate purposes that it concluded that DeClue had violated section 128.7, subdivision (b)(2) in filing the action, and that if the court had not imposed sanctions on DeClue under section 128.7, subdivisions (b)(1) and (b)(3), it would have done so pursuant to section 128.7, subdivision (b)(2).

Ledesma and DeClue appeal.

**DISCUSSION**

Section 128.7 "authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 514.) Subdivision (b) of the statute states, in pertinent part, that "[b]y presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an

11

attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:  [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law. . . . [¶] (3) The allegations and other factual contentions have evidentiary support. . . ."  (§ 128.7, subd. (b).)  Subdivision (c) states that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."  (§ 128.7, subd. (c).)  Sanctions may include "directives of a nonmonetary nature," "an order to pay a penalty into court," and "payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation."  (§ 128.7, subd. (d).)

Section 128.7 further provides that "[a] sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated."  (§ 128.7, subd. (d).)  The Legislature accordingly designed the statute "to be remedial, not punitive."  (*Li v. Majestic Industry Hills, LLC* (2009) 177 Cal.App.4th 585, 591.)  "While section 128.7 does allow for reimbursement of expenses, including attorney fees, its primary purpose is to deter filing abuses, not to compensate those affected by them."  (*Musaelian v. Adams*, *supra*, 45 Cal.4th at p. 519; see also *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 699 [sanctions under section 128.7 "'are not designed to be punitive in nature but rather to promote compliance with statutory standards of conduct'"].)

"A trial court is to apply an objective standard in making its inquiry concerning the attorney's or party's allegedly sanctionable behavior in connection with a motion for sanctions brought under section 128.7.  [Citations.]"  (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921.)  "A court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute.  [Citation.]  However, the

12

sanctions statute "'must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution.'" [Citation.]" (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441.) The trial court's award of sanctions under section 128.7 is reviewed on appeal for an abuse of discretion. (*Ibid*.)

We find no abuse of discretion here. The record in this case amply supports the trial court's conclusion that Ledesma and DeClue filed this latest action "primarily for an improper purpose" as part of a years-long campaign to frustrate creditors and stymie the foreclosure proceedings on the Roxbury property. (§ 128.7, subd. (b)(1).) The trial court could easily conclude on the record before it that the complaint was merely the latest tactic in an ongoing effort to delay the final resolution of issues relating to the property. The trial court was presented with evidence of multiple civil proceedings alleging wrongful foreclosure that were dismissed either when the desired preliminary relief was not granted or when a determination on the merits was imminent. For instance, Ledesma filed his first wrongful foreclosure action only to dismiss it immediately before the summary judgment motion was to be heard. He dismissed his second wrongful foreclosure action after failing to obtain a temporary restraining order blocking the foreclosure sale. The record also demonstrated a history of years of abuse of the bankruptcy court by Ledesma that resulted in determinations of bad faith, filing bars, orders requiring prior approval before further filings, and the dismissal of actions filed by DeClue and Ledesma in violation of these orders. As the bankruptcy court advised DeClue, Ledesma had previously pursued a series of bankruptcy cases that "were completely unsuccessful and found to have been filed in bad faith." The multi-year history of misuse of the bankruptcy courts was even conceded by DeClue in his representation of Ledesma before the bankruptcy court: after the court detailed the long history of misconduct that preceded the most recent filing, DeClue told the court that he "agree[d] with the Court's characterization regarding the bankruptcies." Examining the

13

instant complaint against this backdrop of dilatory tactics, the trial court could reasonably find that it was simply the newest iteration in the campaign to preclude the conclusion of proceedings regarding the Roxbury property and that it was filed for the improper purposes of delay, harassment, forum-shopping, and needless increase in litigation costs.[2]

Ledesma and DeClue argue that even if sanctions were appropriate, the actual sanctions imposed by the court were excessive. While section 128.7, subdivision (d) requires that sanctions be limited to what is sufficient to deter repetition of the improper conduct or comparable conduct by others similarly situated, "[a] court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute." (*Peake v. Underwood*, *supra*, 227 Cal.App.4th at p. 441.) We presume that the court's order is correct and do not substitute our judgment for that of the trial court. (*Ibid.*) Only if the court's action is "sufficiently grave to amount to a manifest miscarriage of justice" is an appellant entitled to relief on appeal. (*Ibid.*)

Ledesma and DeClue have not established any abuse of discretion here. Their allegation of excessiveness is conclusory: after quoting a court opinion relating to sanctions, they assert—without explanation, detail, or citation to the record—that the monetary award went far beyond the purpose of deterrence, bore no relationship to the time spent by the trial court or to the moving parties' costs, and was designed to punish them. They continue, "Even more disturbing is the dismissal of the complaint without any analysis or consideration. Again this seem[s] to be designed to punish, not deter. The award in this case simply does not stand up to scrutiny in basis or amount or in terms of striking Plaintiff's entire complaint." These flat allegations fall far short of establishing any error by the trial court or any miscarriage of justice in imposing the selected sanctions. The evidence before the trial court permitted the conclusions that Ledesma was engaged in abusive, bad faith litigation tactics in both the superior court and the bankruptcy court for years; that DeClue had been advised of the abuses that had

---

[2]    Because we conclude that the sanctions were properly imposed under section 128.7, subd. (b)(1), we need not reach the question of whether sanctions were warranted under section 128.7, subdivision (b)(3).

14

occurred prior to his representation of Ledesma but plunged into the campaign to misuse the courts nonetheless; and that not even the trial court's strong indication that sanctions would be forthcoming dissuaded them from their course of conduct. Moreover, the trial court offered a detailed explanation for its award of sanctions, expressly stating that the award was based on the court's legal and judicial experience, its familiarity with the action, and the goal of effecting deterrence rather than imposing punishment. Specifically, the court noted that Ledesma and DeClue's intransigence in refusing to abandon arguments when advised of the imminence of sanctions prompted it to determine that the sanctions should be even higher than the court had originally contemplated, because even a clear warning that sanctions would have been imposed if the sanctions motion had been properly noticed had failed to cause them to reconsider their conduct. The court concluded that the substantial amounts of $50,000 in attorney fees and $10,000 in sanctions payable to the court were necessary to deter future unprofessional conduct by Ledesma, DeClue, and others. In light of the litigation history and the parties' conduct in this case, this conclusion was manifestly within the scope of the trial court's discretion and was supported by the record.

The trial court, furthermore, determined that striking the complaint with prejudice was appropriate. We acknowledge that the dismissal of an action with prejudice is a severe sanction that generally is only warranted in exceptional circumstances, and it is usually imposed only after some determination of the merits of the claims alleged. (See, e.g., *Jimenez v. Madison Area Tech. College* (7th Cir. 2003) 321 F.3d 652, 658.) In this instance, the record demonstrates that any absence of a determination on the merits of Ledesma's claims is attributable to Ledesma, who has already voluntarily dismissed two prior civil wrongful foreclosure actions and pursued self-prolonged bankruptcy litigation so abusive that it resulted in filing bars and pre-filing authorization requirements that he then violated, leading to the dismissal of still more actions. Moreover, dismissal of a lawsuit is within the authority of the court when a litigant's conduct "abuses the judicial process." (*Pope v. Fed. Express. Corp*. (8th Cir. 1992) 974 F.2d 982, 984 [upholding

15

dismissal of action as a sanction under rule 11 of the Federal Rules of Civil Procedure[3] (28 U.S.C.)].) The trial court was presented with a record that supported and permitted the conclusion that dismissal of the complaint with prejudice was warranted due to the exceptional circumstance of Ledesma's numerous years of profound litigation abuse. Appellants have not demonstrated any abuse of discretion in this conclusion.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


STROBEL, J.[*]

---

[3]     California courts may look to federal decisions interpreting rule 11 of the Federal Rules of Civil Procedure when examining the provisions of section 128.7 because section 128.7 is modeled on rule 11. (*Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 413.)

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.