Filed 7/23/25  Alanic Internat. Corp. v. Wilson Trial Group CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ALANIC INTERNATIONAL CORPORATION, | B334512 |
| Cross-Complainant and Appellant; | Los Angeles County Super. Ct. No. 20STCV44683 |
| WILSON TRIAL GROUP et al., | |
| Appellants, | |
| v. | |
| BARANESS INVESTMENTS LLC, | |
| Cross-Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed with directions.

Wilson Trial Group, Dennis P. Wilson; Law Offices of Deborah Eshaghian and Deborah Eshaghian for Cross-Complainant and Appellants.

Abir Cohen Treyzon Salo, Boris Treyzon and A. Monica Szkopek for Cross-Defendant and Respondent.

Alanic International Corporation (Alanic) and its counsel appeal from the trial court's award of attorney fees and costs against them as sanctions under Code of Civil Procedure[1] section 128.7 after the court granted summary judgment on Alanic's third amended cross-complaint (TACC) in favor of Baraness Investments LLC (Baraness) and its principal Sean Baraness (collectively, cross-defendants).[2]

We conclude the award of sanctions against Alanic and its counsel was warranted. However, we remand the matter for the trial court to modify its order to specify the sanction award is imposed against Alanic's counsel only to the extent it includes attorney fees and costs that cross-defendants incurred after counsel appeared in the action.

## BACKGROUND

### 1. *The underlying allegations*

Alanic—a wholesale garment producer—is owned and operated by brothers Johnny and Tony Beig. Sean Baraness allegedly is the sole member and principal of Baraness. The parties' dispute involves cross-defendants' bulk purchase of face masks from Alanic during the height of the COVID-19 pandemic. In November 2020, Baraness sued Alanic for breach of contract

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Sean Baraness did not file a respondent's brief or join in Baraness's respondent's brief.

2

and other causes of action. A few months later, Alanic filed a cross-complaint against cross-defendants. After several demurrers, the operative TACC alleged nine causes of action: breach of contract; violation of the California Uniform Commercial Code; open book account; account stated; quantum meruit; promissory estoppel; fraudulent inducement; intentional concealment; and violation of the unfair competition law, Business and Professions Code section 17200 et seq.

Cross-defendants allegedly approached Alanic in April 2020 about making a wholesale purchase of face masks to resell at a profit. Sean and the Beig brothers had an existing, friendly relationship.[3] Cross-defendants ordered 700,000 KN95 masks—for a total purchase price of $1,519,000—through three separate invoices dated (1) April 7, 2020 for 300,000 4-ply KN95 masks; (2) April 8, 2020 for 100,000 KN95 masks; and (3) April 10, 2020 for 300,000 KN95 masks.[4] Through a fourth invoice, dated April 14, 2020, cross-defendants ordered one million 3-ply masks for a total price of $450,000.

Alanic accepted a 50 percent deposit from cross-defendants to fulfill the orders, with the balance owed before delivery of the masks. Alanic alleged cross-defendants paid in full for 400,000 of the KN95 masks—through their initial deposits on the invoices—but did not take delivery of 200,000 of them, forcing

___

[3] We refer to the individual principals by their first names to avoid confusion. We intend no disrespect.

[4] The April 8 and 10 invoices did not specify the ply of the masks.

Alanic to incur storage costs.[5]  Alanic alleged cross-defendants did not pay for the remaining 1.3 million masks Alanic produced and thus breached their agreement.  Alanic alleged cross-defendants owed Alanic the $1,242,030 balance for those masks, as well as "$100,000 for storage, shipping, attorneys' fees and other expenses."

Alanic also alleged cross-defendants, through Sean, fraudulently represented their intention and ability to pay Alanic for the masks.  Alanic alleged that, in agreeing to contract with cross-defendants, it relied on Sean's assurances that "the masks were '[g]onna sell in 1 hour' " and " '[e]verything you get me gonna sell,' " as well as his statement that he had a "robust customer base through his construction business to whom he would sell the masks."  Alanic alleged those statements were false and cross-defendants concealed "their lack of experience, lack of proper business model, and inability to sell and pay in full for the masks."

## 2.  *Deposition testimony*

Alanic's current attorneys—Dennis P. Wilson and Deborah Eshaghian—took over Alanic's representation in the case on November 8, 2022.[6]  They attended the depositions of the parties'

---

[5]     In its complaint against Alanic, Baraness alleged it paid for 400,000 4-ply KN95 masks but received only 200,000 4-ply masks.  The other 200,000 masks were 5-ply masks that were part of Alanic's existing stock.

[6]     Only Wilson signed the substitution of attorney form.  He apparently changed the name of his firm from the Law Offices of Dennis P. Wilson to the Wilson Trial Group.  Eshaghian and

4

principals—Sean, Tony, and Johnny—in November and December 2022. Johnny testified as the person most qualified (PMQ) for Alanic.

Johnny made clear the parties' mask purchase agreement actually consisted of four separate orders through the four invoices. Johnny explained Alanic issued an invoice as its offer to fulfill a customer's order, with the customer's payment of the invoice acting as "acceptance of the legal agreement." As with all of Alanic's customers, Johnny testified, there was no contract until Sean paid—"if it's not paid, you're not buying into anything." Johnny didn't "really care" whether Sean had the money or not when he put in the orders for the masks— "[i]f he's paying, he is in a legal contract with us"; there was no legal contract before he paid.

a. *KN95 mask orders*

Johnny testified Alanic canceled 300,000 KN95 masks from the 700,000 cross-defendants originally had ordered. Tony testified he had placed the order with the manufacturer, but Alanic "canceled part of the invoices" for Sean and sold 300,000 of the KN95 masks to another buyer. Tony explained Sean intended to sell the first shipment of masks he received and use that revenue to pay the balances due on the invoices. But "the market tanked," and Sean "did not have the money so we have to cancel—in good faith. Because he begged me a lot, and in good faith I tried to help him and got him off the hook for the balance." Tony testified Sean "got lucky that we had

her firm, the Law Offices of Deborah Eshaghian, apparently associated into the case as co-counsel.

5

other buyers. If we didn't have other buyers, right now we would not be talking about 400,000 masks, we would be talking about 700,000 masks because legally he's liable for 700,000 masks that he paid a deposit on and liable for $1.2 million dollars to me." Tony continued, "I got lucky for KN95. Somebody bought the balance. So that's exactly why we let him off the hook, because he was a friend and I had another buyer." Tony testified "we gave him what he paid the deposit for [400,000 masks] as an initial order of 700,000."

      b.     *3-ply mask order*

As for the one million 3-ply masks, Johnny testified the invoice for that purchase was "not in dispute." Alanic "took those back and [the] money was returned." Alanic had a customer who wanted to buy the one million 3-ply masks, but after Alanic repurchased them from Sean, that deal "didn't go through." Johnny testified Alanic refunded Sean's deposit on the 3-ply masks when it repurchased them. Alanic did not demand Sean pay for any storage of the 3-ply masks, "because the order was done in a friendly manner." Johnny confirmed the 3-ply masks "are no longer at issue in this litigation," and cross-defendants did not owe Alanic any money from that order. Tony agreed Alanic canceled the 3-ply order—and repurchased those masks—because Alanic "had a buyer who verbally confirmed but [*sic*] never went through."[7] Sean confirmed in text messages to Tony where he could pick up the 3-ply masks Alanic had repurchased from him.

---

[7] Sean testified, "Tony approached me with an offer to buy all the 3-plys back, that they had a buyer, and I agreed to that, so they just bought it back, and we scrap[p]ed the whole thing."

c.  *Sean's representations*

Johnny testified he met Sean in 2015 or 2016.  At that time, he knew Sean was "doing some solar and construction work."  Sean told Johnny "he had a call center where he was selling marketing leads or doing solar."  Johnny also knew that Sean had shares in a Mexican restaurant.  When they met, Sean was driving a BMW X5.  In 2019, Sean was driving a Bentley convertible worth $300,000 to $400,000.

Johnny testified he saw a text message from Sean to Tony telling Tony his business was not doing well because construction was shut down due to the pandemic.  Johnny described Sean as asking Tony, as a friend, to put in the order for the masks because it would be "a good opportunity" and would help him as his "other business [was] not doing well."  Johnny testified Sean was "optimistic" that he would sell "gazillions" and "wanted to invest every single penny that he had to source the product [the masks]."

Alanic did not ask Sean "to provide assurances about [his] ability to pay" "before issuing the invoices," however.  Johnny testified, "We don't want to ask our clients how their financial background is.  If he wants to enter in an agreement, we would assume they have money.  And Sean was a successful businessman.  So, you know, obviously he had money.  So I didn't have a need.  If he was driving a $200,000 car, I better believe he has money."

Johnny also testified Sean said "he could sell a lot" and had "so many people" who wanted to buy.  Sean had told Johnny "something like" being able to "sell ice to an Eskimo."  Counsel asked Johnny if Alanic relied on Sean's statements in deciding to sell the masks to him.  Johnny responded, "It's not my job.

You come to me with $200,000 say I want to order a plane, I will take your money and try to develop a plane. I don't . . . [ask] what is your financial situation. As long as you're paying me, you're my customer. You're not paying me, you're not my customer." Counsel then asked, "You are an experienced businessman. You don't go just by what people tell you about their ability to sell, right?" Johnny answered, "Exactly. But money talks. Bullshit walks. He put money means he wanted to order." When asked if Sean "ever promise[d]" to pay Alanic in full for any of its invoices, Johnny responded, "I doubt it. I don't think so."

3. ***Cross-defendants' motions***

On February 7, 2023, cross-defendants served and filed their motion for summary judgment or, in the alternative, summary adjudication of issues. A week later, on February 15, 2023, cross-defendants served their motion for sanctions under section 128.7. After Alanic did not withdraw its TACC, cross-defendants filed the motion for sanctions on April 3, 2023. On April 27, 2023, Alanic filed oppositions to the motions for sanctions and for summary judgment on the ground triable issues of material fact precluded summary adjudication of each of the TACC's causes of action and thus sanctions were not warranted.[8]

---

[8] The appellate record does not include a separate memorandum of points and authorities in opposition to cross-defendants' motion for summary judgment, although the case register indicates Alanic filed one on April 27, 2023. The memorandum of points and authorities Alanic filed, also on April 27, in opposition to the sanctions motion—included in the record twice—argued genuine issues of material fact on each of the TACC's claims precluded summary judgment. We can infer

The court heard cross-defendants' motions on May 11, 2023. The court issued a tentative ruling granting both motions. As relevant here, the court found Alanic's principals' testimony demonstrated "the parties terminated their agreements for the sale of the KN95 masks beyond [the 400,000] covered by [c]ross-[d]efendants' initial deposit," and terminated the order for the 3-ply masks. The court found Alanic had "presented no evidence disputing that the parties' intent was to terminate the remainder of the mask sales." Accordingly, the court found the "termination of the sales contracts discharged [c]ross-[d]efendants' remaining obligations," precluding Alanic's claims premised on the breach of the sales contracts.

The court in turn found Alanic's breach of contract claims were factually frivolous because Alanic's principals had testified cross-defendants did not owe Alanic for the 1.3 million masks that the TACC alleged they had a "duty to pay." The court specifically noted that Johnny, as Alanic's PMQ, testified Alanic canceled 300,000 KN95 masks from cross-defendants' order of 700,000, and cross-defendants "did not owe Alanic any money from the 3-ply mask order, because Alanic repurchased those masks to resell them to another buyer." The court found Alanic's principals' testimony called "into question whether Alanic's claims were factually reasonable even at the time of filing," but "in any case, it should have been clear that the claims were not 'well grounded in fact' following the Beig depositions."

---

Alanic's opposition to the summary judgment motion included those same arguments. Alanic's separate statement in opposition to the motion for summary judgment is part of the appellate record and is cited in Alanic's opposition to the sanctions motion.

The court similarly found summary adjudication warranted on Alanic's fraud causes of action—fraudulent inducement and concealment—and that those claims were factually and legally frivolous. Alanic had presented "no evidence of any misrepresentation of material fact made by [c]ross-[d]efendants in connection with the sales agreements," nor "point[ed] to any evidence indicating that [Sean] concealed a material fact that he had a duty to disclose to Alanic." The court noted the TACC alleged Sean " 'made intentional misrepresentations regarding [c]ross-[d]efendants' ability to pay and undertake a venture of such magnitude,' and that 'Sean Baraness stated to Alanic's principals that he had a robust customer base through his construction business to whom he would sell the masks.' " The court found Alanic nevertheless presented "no evidence of misrepresentations by [Sean] regarding buyers at his construction business."

Moreover, Alanic's evidence that Sean misrepresented cross-defendants' " 'ability to pay and undertake a venture of such magnitude,' " was limited to Sean's representations that he owned a call center, had shares in a Mexican restaurant, and "drove an expensive car." The court noted Johnny testified Sean made those claims in 2015 or 2016—four years before the parties entered the agreements at issue. The court found there "was no evidence that these claims induced Alanic to enter into the sales agreement[s] years later, nor any showing that the claims were false." Finally, the court found Alanic's "argument that fraudulent inducement may be based on [Sean] driving a Bentley convertible is clearly not warranted by existing law or any extension or modification of it. Any reasonable attorney

10

would agree that these claims are 'totally and completely without merit.' "

Addressing the motion for summary judgment, Alanic's counsel argued "[t]here's no question that there was a contract with regards to the KN95 mask[s]," and Alanic had incurred storage costs that should be considered under the breach of contract claim or account stated claim. Cross-defendants' counsel argued Alanic unequivocally had canceled 300,000 of the KN95 masks—and sold them to another buyer—and terminated the 3-ply mask contract with no mention of storage costs. Counsel argued the termination of the contractual relationship had extinguished "all the rights and obligations of the parties thereunder."

During the argument on the motion for sanctions, the court noted Johnny had "disavowed the claims" counsel had "asserted on [Alanic's] behalf," and Tony's testimony that they "let [Sean] off the hook" was inconsistent with any claim for storage fees. Alanic's counsel argued there had been no bad faith here as there had been in *Peake*.[9] Counsel for cross-defendants argued

---

[9] *Peake v. Underwood* (2014) 227 Cal.App.4th 428 (*Peake*). In *Peake*, the plaintiff originally alleged statutory and common law claims against the defendant real estate agent but stipulated to strike her common law claims against him early in the case. (*Id.* at pp. 433–434, 449.) The trial court inferred the plaintiff or her attorney recognized those claims were without merit. (*Id.* at p. 449.) In response to the agent's sanctions motion on the remaining statutory claim, however, plaintiff asked to amend her complaint to reassert the dismissed common law claims. (*Id.* at pp. 434, 436.) The appellate court found section 128.7 sanctions were justified for several reasons, "including that

the brothers' depositions—that both of Alanic's attorneys sat through—proved this was "a bad faith frivolous complaint." Counsel argued "we should have been done with this case months ago."

The court adopted its tentative ruling as the final order of the court. Counsel for Alanic asked to clarify that the court's tentative on the motion for sanctions was against Alanic alone. The court ruled the order should reflect the sanctions also were against counsel, as cross-defendants had asked for sanctions against both. Alanic's counsel again argued they did not engage in bad faith. The court explained,

> "Counsel, to have your clients say what
> they said, and, in my view, you should have
> dismissed it on your own. Then to go through
> this safe harbor and have this woefully
> inadequate opposition to the summary
> judgment motion, . . . there's no defense here.
> It doesn't have to have all of the same
> (unintelligible) as on the *Peake* case. [¶]
> You are a competent attorney, and the facts
> that you allege were completely contradicted
> by your own clients under oath. There is
> no basis whatsoever to continue with the
> cross-complaint. I'm not discussing it."

---

Peake's claims were inconsistent with the admitted facts and well-settled law, and the record reflects that Peake's trial counsel had no reasonable belief in the validity of the claims." (*Peake*, at p. 433.)

On May 25, 2023, the court entered judgment in favor of cross-defendants on Alanic's cross-complaint. Cross-defendants then moved for $324,722.17 in attorney fees and $19,971.76 in costs, as well as $9,199.66 in costs not recoverable under section 1033.5 but that cross-defendants argued they had incurred due to Alanic's violation of section 128.7. Alanic filed a motion to tax costs and opposed cross-defendants' motion, arguing they were seeking "a windfall of attorney's fees covering the entire matter, even though the 128.7 motion currently on appeal only related to the ancillary cross-complaint that was dismissed on summary judgment." (Italics and boldface omitted.) Alanic argued the fees sought were unreasonable and unnecessary to the dismissed cross-complaint. Alanic contended cross-defendants had included billing entries that could have related only to the complaint—covering the time period both before Baraness filed its complaint, and after Baraness filed its complaint but before Alanic filed its cross-complaint, as well as for other services "not associated with the [c]ross-[c]omplaint." Alanic also argued the billing rates of cross-defendants' attorneys were unreasonable. Alanic argued cross-defendants' failure to submit "supporting evidence of the time spent specifically related to the cross-complaint, the tasks performed and the benefit to the cross-defendants as opposed to the main complaint still being litigated," permitted the court to deny the requested fees "altogether."

The court heard cross-defendants' motion for attorney fees on August 14, 2023, and Alanic's motion to tax costs on August 25, 2023. The court took both matters under submission and issued its rulings on August 29, 2023. The court awarded cross-defendants attorney fees in the amount of $105,000 "as

13

[the] prevailing parties on summary judgment and the sanctions motion." The court found cross-defendants' attorneys' rates were "extremely high, especially since, in the Court's view, neither the Complaint nor Cross-Complaint presented any novel or difficult legal issues." The court acknowledged, however, that Alanic "made ascertaining the facts of [its] claim unreasonably difficult and time consuming and cannot be heard to complain about the many hours spent on discovery and motion practice in this case." The court found cross-defendants' "moving papers and supporting documents did not make it easy to evaluate the work performed by counsel and whether the hours spent were reasonable and necessary." The court specifically noted it did not appear that cross-defendants "made much of an effort to apportion the fees between the complaint and cross-complaint." Nevertheless, the court also found Alanic "largely fail[ed] to satisfy its burden to point to specific billings that [were] excessive or unreasonable."

The court found the amount of time cross-defendants' counsel billed—over 250 hours for the primary attorney—was excessive. The court thus awarded cross-defendants fees of $105,000 "representing 150 hours worked by [that attorney], only, at a rate of $700 per hour." On Alanic's motion, the court taxed the memorandum of costs by $10,451.16, awarding cross-defendants $9,520.60 in costs. The court struck filing fees incurred exclusively in connection with the complaint and taxed the deposition costs by 50 percent because they related to both the complaint and cross-complaint. On September 21, 2023, the court signed an order—prepared by cross-defendants' counsel —that cross-defendants were entitled to attorney fees in the amount of $105,000 and costs in the amount of $9,520.60 "against Alanic . . . , Law Offices of Dennis P. Wilson and

14

Deborah Eshaghian, Esq." Alanic "and their counsel" appealed from that order.

## DISCUSSION

### 1. *Applicable law and standard of review*

Section 128.7 authorizes trial courts to issue sanctions—including monetary and terminating sanctions—against a party or the party's attorney for filing, submitting, or later advocating a pleading or other similar paper that was "filed for an improper purpose or was indisputably without merit, either legally or factually." (§ 128.7, subds. (b)–(d); *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 189 (*Bucur*).) Here, the court imposed sanctions after finding Alanic's claims against cross-defendants were frivolous.

"A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Peake, supra*, 227 Cal.App.4th at p. 440; § 128.7, subds. (b)(2) [legal claims must be "warranted by existing law or by a nonfrivolous argument for the extension [etc.] . . . of existing law or the establishment of new law"], (b)(3) [factual contentions must "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"].) "In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Peake,* at p. 440.)

"[E]ven though an action may not be frivolous when it is filed, it may become so if later-acquired evidence refutes the

15

findings of a prefiling investigation and the attorney continues to file papers supporting the client's claims.  [Citation.]  Thus, a plaintiff's attorney cannot 'just cling tenaciously to the investigation he had done at the outset of the litigation and bury his head in the sand.'  [Citation.]  Instead, 'to satisfy [the] obligation under [section 128.7] to conduct a reasonable inquiry to determine if his [or her] client's claim was well-grounded in fact,' the attorney must 'take into account [the adverse party's] evidence.' " (*Peake, supra,* 227 Cal.App.4th at p. 441.)

"[S]ection 128.7 provides for a 21-day period during which the opposing party may avoid sanctions by withdrawing the offending pleading or other document." (*Peake, supra*, 227 Cal.App.4th at p. 441; § 128.7, subd. (c)(1).)  "By providing this safe harbor period, the Legislature designed the statute to be 'remedial, not punitive.' " (*Peake*, at p. 441; see *Musaelian v. Adams* (2009) 45 Cal.4th 512, 519 (*Musaelian*) [primary purpose of § 128.7 "is to deter filing abuses, not to compensate those affected by them"].)  A court has broad discretion to impose sanctions when a party does not take advantage of the safe harbor period by withdrawing the offending filing.  (*Bucur, supra*, 244 Cal.App.4th at p. 190.)  The statute must not be construed, however, to conflict with an attorney's duty " 'to represent his or her client zealously,' through innovative but sensible advocacy." (*Ibid.*)  Moreover, a court must limit sanctions "to what is sufficient to deter repetition of [the sanctionable] conduct or comparable conduct by others similarly situated." (§ 128.7, subd. (d); *Musaelian,* at p. 519.)

We review an award of section 128.7 sanctions for an abuse of discretion. (*Peake, supra,* 227 Cal.App.4th at p. 441.)  Under this standard, we defer to the trial court's factual findings that

16

are supported by substantial evidence. (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544; see *In re White* (2020) 9 Cal.5th 455, 469–470 [under abuse of discretion standard of review, "a trial court's factual findings are reviewed for substantial evidence, and its conclusions of law are reviewed de novo"].) "We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Peake,* at p. 441.) The appellant bears the burden to overcome our presumption of correctness by affirmatively demonstrating error on the record presented. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*); *Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564 (*Denham*).)

2.      ***Alanic has not demonstrated the trial court erred in awarding sanctions under section 128.7***

Alanic generally contends we must reverse the section 128.7 sanctions award because the trial court improperly granted cross-defendants summary judgment on the TACC, "ignor[ing]" evidence that showed genuine issues of material fact existed.[10] The court found the undisputed evidence—namely, the testimony of Alanic's principals—established summary adjudication was warranted on each of Alanic's causes of action, and that same

---

[10]     Alanic did not appeal from the underlying summary judgment; it appealed only from the September 21, 2023 order awarding cross-defendants attorney fees and costs as sanctions under section 128.7.

testimony demonstrated the TACC's breach of contract and fraud claims were frivolous.[11]

Alanic has not affirmatively demonstrated the trial court erred in granting summary judgment to support its contention that, as a result, the court's award of sanctions was an abuse of its discretion. It is a fundamental rule of appellate review that an appealed judgment or order is presumed correct, and error must be affirmatively shown. (*Jameson, supra*, 5 Cal.5th at pp. 608–609; *Denham, supra*, 2 Cal.3d at p. 564.) In the absence of a contrary showing in the record, the appellate court will make all presumptions in favor of the trial court's action. (*Jameson*, at p. 609.) Alanic thus has the burden to demonstrate the trial court erred "by presenting legal authority on each point made and factual analysis, supported by appropriate citations *to the material facts in the record*; otherwise, the argument may be deemed forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655 (*Keyes*), italics added.) Instead, Alanic simply regurgitates the arguments it made in its memorandum of points and authorities in opposition to cross-defendants' motion for sanctions/summary judgment—what the court described as a "woefully inadequate opposition to the summary judgment motion."

Moreover, not a single record citation appears within this literal cut-and-paste reproduction of Alanic's memorandum of points and authorities. "Any reference in an appellate brief

---

[11] In granting cross-defendants' motion for summary judgment, the trial court found Alanic failed to present any evidence to support any of its causes of action. The record supports the court's findings on each cause of action.

to matter in the record must be supported by a citation to the volume and page number of the record where that matter may be found." (*Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 741, citing Cal. Rules of Court, rule 8.204(a)(1)(C).) "This rule applies to matter referenced at any point in the brief, not just in the statement of facts." (*Sky River*, at p. 741.) Alanic's statement of facts includes record citations, but they refer to pages within the same opposition memorandum of points and authorities, *not* to the specific evidence in the record that Alanic contends establishes triable issues of material fact existed. (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379 [to demonstrate triable issues exist on an appeal from a judgment granting summary judgment, appellant "must 'direct the court to *evidence* that supports his arguments' "].) "An appellant who fails to pinpoint the evidence in the record indicating the existence of triable issues of fact will be deemed to have waived any claim the trial court erred in granting summary judgment." (*Ibid.*) Accordingly, Alanic has forfeited its argument that the trial court erred in awarding sanctions on the ground triable issues of fact existed on its cross-claims.

But as the trial court noted—and Alanic argues—a plaintiff's inability successfully to defend against summary judgment alone is insufficient to support sanctions. (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1121, cited by trial court.) The issue on a section 128.7 sanctions motion is " 'not merely whether the party would prevail on the underlying factual or legal argument,' but rather whether any reasonable attorney would agree that the claim is totally and completely without merit. [Citation.] Hence, the evidentiary burden to escape

19

sanctions under section 128.7 is light." (*Id.* at p. 1126.) A plaintiff "need not [have] amass[ed] even enough evidence to create a triable issue of fact as would be required" to overcome a motion for summary judgment. (*Ibid.*) The evidence in the record overwhelmingly supports the trial court's finding that Alanic's contract- and fraud-based cross-claims lacked even minimal merit.

The TACC's contract-related claims alleged cross-defendants ordered 1.7 million masks from Alanic but did not pay for 1.3 million of them. Alanic alleged cross-defendants owed it the price for the 1.3 million masks, as well as for storage fees. The court found these allegations—the underlying basis for Alanic's TACC—lacked any evidentiary support as Alanic's own principals testified cross-defendants did not owe Alanic for those 1.3 million masks. Johnny, as Alanic's PMQ, unequivocally testified cross-defendants did not owe Alanic any money for the 3-ply masks,[12] and Alanic had canceled 300,000 KN95 masks from cross-defendants' original order of 700,000.

Here, as in the trial court, Alanic does not mention this damaging testimony at all, much less explain how it was insufficient to establish Alanic's contract claims were factually frivolous. "[A]n attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent

_____

[12] Johnny tried to walk back that testimony, stating the order still was "in dispute" because Alanic lost money when its client did not buy the repurchased 3-ply masks. He nevertheless testified Alanic refunded the money Sean had paid for those masks after it agreed to take the 3-ply masks back, demonstrating Alanic's clear intent to cancel the order.

20

that a substantial amount of evidence was received on behalf of the respondent. [Citation.] Thus, appellants who challenge the decision of the trial court based upon the absence of substantial evidence to support it ' "are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed waived." ' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; see also *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 ["An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment."]; *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 [party challenging sufficiency of the evidence forfeited the issue by failing to mention the trial court's findings and omitting the facts that supported those findings].)

Even if we were to consider Alanic's arguments, they have no merit. In both its opening and reply briefs, Alanic simply repeats the argument it made in the trial court that its claims had merit because cross-defendants ordered a total of 700,000 KN95 masks but did not pay for 300,000 of them; cross-defendants ordered 1,000,000 3-ply masks, but Alanic "had to buy [them] all back" when cross-defendants couldn't sell them; and Alanic incurred costs to store the ordered, but unpaid for, masks.

As the trial court found, however, Alanic's principals' testimony demonstrated the parties mutually terminated all mask orders that were the subject of the TACC. (Civ. Code, § 1689, subd. (a) ["[a] contract may be rescinded if all the parties thereto consent"].) "A contract remains in force until it has been terminated either according to its terms or through the acts of the parties evidencing an abandonment. [Citation.]

21

Abandonment of a contract is a matter of intent and is to be ascertained from the facts and circumstances surrounding the transactions out of which the abandonment is claimed to have resulted.  It may be implied from the acts of the parties." (*Busch v. Globe Industries* (1962) 200 Cal.App.2d 315, 320; *Evans v. Rancho Royale Hotel Co.* (1952) 114 Cal.App.2d 503, 508 (*Evans*) [parties can mutually abandon a contract—through oral agreement—at any stage of their performance, releasing each of the parties from any further obligation under the contract].)

As was the case below, Alanic does not address this issue on appeal.  Nor does Alanic discuss the uncontroverted evidence supporting the court's findings—testimony from one or both of its principals that Alanic:

- repurchased and retrieved the 3-ply masks from cross-defendants with the intent to resell them to another customer;
- did not demand that Sean pay for storage of the 3-ply masks (or the unclaimed KN95s) before it repurchased them— "because the order was done in a friendly manner";
- refunded Sean the payment he had made on the 3-ply masks;
- "got [Sean] off the hook for the balance" of the KN95 masks by selling them to another buyer; and
- gave Sean only "what he [had] paid for" on the invoices through his initial deposits, which amounted to the 400,000 KN95 masks Alanic had delivered.

This testimony—that Alanic completely ignores—not only established Alanic's intent to terminate the sales contracts for the remaining 1.3 million masks but also made clear Alanic could not reasonably have believed its contract claims had any merit. (See *Peake, supra*, 227 Cal.App.4th at pp. 448–449 [sanctions

warranted where, among other reasons, "appellants engaged in conduct supporting the conclusion that they did not reasonably believe the claims had any merit"].) Alanic acted through its principals. When they filed their original cross-complaint, the Beig brothers knew they had canceled the rest of the KN95 mask order and repurchased the 3-ply masks. They even had refunded Sean the money he had paid Alanic. Alanic's buyer for the 3-ply masks may have fallen through, but Alanic offered no evidence that its repurchase of the 3-ply masks, or its cancellation and resale of the 300,000 KN95 masks, was conditional. Indeed, its principals' testimony established they weren't. The termination of the sales contracts discharged cross-defendants' obligation to purchase any masks beyond the 400,000 covered by their initial deposits. (See Cal. U. Com. Code, § 2106, subd. (3) ["On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives."]; *Evans, supra*, 114 Cal.App.2d at p. 508 [mutual abandonment of contract releases each party from its obligations].) As cross-defendants received no more than they paid for—and Alanic never demanded, or billed, storage fees as a condition of the cancellation or repurchase of the mask orders—no factual basis existed for Alanic to claim cross-defendants owed it anything.

Alanic's briefs also fail to address the trial court's finding that Alanic's fraud claims were both factually and legally frivolous. The general elements of fraud are (1) misrepresentation, including false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The TACC alleged

23

Sean "made intentional misrepresentations regarding [c]ross-[d]efendants' ability to pay and undertake a venture of such magnitude," told "Alanic's principals that he had a robust customer base through his construction business to whom he would sell the masks," and misrepresented that cross-defendants "would pay Alanic in full for the goods and services rendered by Alanic."

As the court found, however, Alanic presented no evidence of misrepresentations by Sean about buyers at his construction business. Alanic also failed to present any evidence demonstrating the statements Sean made in 2015 or 2016—about his ownership of a call center, having shares in a Mexican restaurant, or his driving an expensive car—induced Alanic to contract with cross-defendants in 2020, much less that those claims were false. Johnny also "doubt[ed]" and "d[idn]'t think" Sean promised to pay the invoices in full. Moreover, Alanic's PMQ established Alanic's allegation that it relied on any representation Sean made, or didn't make, about his ability to pay for the masks was "not well grounded in fact." Johnny testified he saw a text message Sean sent Tony stating his "business [was] not doing well" *before* Alanic agreed to sell cross-defendants the masks. Johnny also confirmed Alanic did not ask Sean to provide assurances about his ability to pay for the masks before Alanic issued the invoices. Alanic ignores this testimony and does not address the court's findings. It simply argues— as it did below and without citation to the record—that Sean represented he "was making money, based on what he told [Alanic], based on the car he was driving, based on where he was living and how he was spending" and concealed his "lack of knowledge, experience, or financial wherewithal to successfully

24

resell the volume of masks ordered."  Moreover, Alanic made no argument below—and has made none on appeal—that an extension or modification of existing law would support its fraudulent inducement claim based on Johnny's belief that Sean had money because he drove a Bentley.

In sum, we conclude that—after hearing the Beig brothers' testimony—any reasonable attorney would agree Alanic's contract and fraud claims were " 'totally and completely without any merit.' "  (*Peake, supra*, 227 Cal.App.4th at p. 440.)  Alanic and its counsel nevertheless argue sanctions were not appropriate because they punished counsel for "zealously advocating on behalf of their client on a cross[-]complaint that they never even presented to the lower court."

Sanctions should not be imposed " 'to conflict' " with an attorney's duty to zealously advocate for his or her client, which may require the attorney " 'to read a case or an agreement in an innovative though sensible way.' "  (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167–168, relied on by Alanic and cited by the trial court.)  That was not the case here, however.  Indeed, in reducing cross-defendants' requested attorney fees, the court found "neither the Complaint nor Cross-Complaint presented any novel or difficult issues."  Nor does counsel argue how its continued pursuit of Alanic's claims after hearing the testimony of the Beig brothers constituted "innovative but sensible advocacy."  (*Bucur, supra*, 244 Cal.App.4th at p. 190.)

We agree counsel cannot be held responsible for Alanic's knowledge at the time it filed its cross-complaint, before counsel represented Alanic.  But as the court noted, an action that is not frivolous when filed " 'may become so if later-acquired evidence refutes the findings of a prefiling investigation and the attorney

25

continues to file papers supporting the client's claims.' " (Quoting *Peake, supra*, 227 Cal.App.4th at p. 441.) The trial court found —and we have agreed—any reasonable attorney would have concluded Alanic's claims were totally and completely without merit after hearing the Beig brothers essentially disavow the basis for Alanic's cross-complaint. (*Id.* at p. 440.) Cross-defendants filed their motion for summary judgment after the Beig brothers' depositions but before it served the motion for sanctions. Accordingly, during the safe harbor period, Alanic's attorneys—who were present for the brothers' testimony— were more than aware of the specific grounds cross-defendants asserted in support of their position that Alanic's claims were without merit. (See *id.* at pp. 448–449.) Not only did counsel not withdraw the TACC; they continued to press Alanic's objectively meritless claims by opposing the motion for summary judgment.

Noting their clients "contradicted . . . under oath" the allegations in the TACC, the trial court admonished counsel, "to have your clients say what they said . . . in my view, you should have dismissed [the TACC] on your own." We agree. More than a month had elapsed between Alanic's principals' last deposition on December 28, 2022, and cross-defendants' service of the sanctions motion on February 15, 2023, that it waited to file until April 3. At a minimum, counsel (and their client) should have withdrawn the TACC during the safe harbor period. On this record, the court did not abuse its discretion by imposing section 128.7 sanctions against both Alanic and its attorneys. (See *Peake, supra*, 227 Cal.App.4th at p. 441 ["When a party does not take advantage of the safe harbor period, the 'statute enables courts to deter or punish frivolous filings which disrupt matters, waste time, and burden courts' and parties' resources.' "].)

In so finding, we do not intend to suggest Alanic's counsel acted in bad faith. At the hearing on the motions, Alanic's counsel argued they did not engage in bad faith. But as Alanic and its counsel note, "when establishing a claim is factually or legally without merit under . . . section 128.7, it is not necessary to show the party [or counsel] acted with an improper motive or subjective bad faith." (*Peake, supra*, 227 Cal.App.4th at p. 449.) The statute "requires only that the conduct be 'objectively unreasonable.' " (*Guillemin v. Stein, supra*, 104 Cal.App.4th at p. 167.) The record more than supports the court's finding that Alanic's and its counsel's continued pursuit of Alanic's cross-claims was objectively unreasonable.

3.  ***Alanic failed to show the court abused its discretion in awarding $105,000 in attorney fees***

Alanic's counsel contends the court erred in awarding section 128.7 sanctions against its current counsel because the award included attorney fees relating to conduct that occurred before current counsel became involved—i.e., the original filing of the cross-complaint and its amendments after "heavily litigated demurrers and motions to strike between [cross-defendants'] counsel and prior counsel for [Alanic]." Baraness argues Alanic's counsel have forfeited this argument because they are making it for the first time on appeal. Alanic contends it argued in the trial court that cross-defendants had asked for attorney fees relating to the entirety of the litigation.

"It is axiomatic that arguments not raised in the trial court are forfeited on appeal." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.) Alanic's reply brief asserts attorney Eshaghian "expressly argued" counsel "should not be sanctioned for the entire litigation" at the hearing

27

on cross-defendants' motion. Alanic provides no citation in the record for this assertion. In its opposition to cross-defendants' fee motion, however, Alanic did argue cross-defendants had asked for attorney fees relating to the entire matter when the sanctions motion "only related to the ancillary cross-complaint that was dismissed on summary judgment." (Italics and boldface omitted.)

In its underlying order granting cross-defendants' motion for sanctions, the court granted their request for "monetary sanctions for the attorney's fees and costs" they incurred "in defending against the [c]ross-[c]omplaint and in bringing the [sanctions] motion." The court's granting of that request was "limited to what [was] sufficient to deter repetition" of similar conduct and fell within the type of sanctions outlined under section 128.7. (§ 128.7, subd. (d).) In its subsequent order awarding cross-defendants those attorney fees, the trial court acknowledged Alanic's argument that cross-defendants had included billings unrelated to the cross-complaint. The court also noted cross-defendants had not "made much of an effort to apportion the fees between the complaint and cross-complaint."[13] In the end, the court found excessive the 250 hours that the main lawyer had billed "ostensibly on the defense of the [c]ross-[c]omplaint." Instead, the court awarded cross-defendants fees in the amount of $105,000—less than a third of what they had requested—representing 150 hours of that attorney's work.[14]

---

[13] Yet, Alanic "largely fail[ed] to satisfy its burden to point to specific billings that are excessive or unreasonable."

[14] Cross-defendants also had asked for fees for hours worked by other attorneys and a paralegal.

28

We can infer the court considered Alanic's arguments and significantly reduced the fees it awarded in part to account for fees that did not relate to the cross-complaint. Alanic cites nothing in the record—other than the trial court's order—to demonstrate the court abused its discretion by awarding cross-defendants $105,000 of the $324,722 in attorney fees they requested. For example, Alanic does not cite any evidence to establish the $105,000 included amounts cross-defendants incurred before Alanic filed the cross-complaint. Certainly, nothing in the court's order indicates it awarded sanctions against Alanic and its counsel "spanning the entire litigation." Accordingly, to the extent Alanic and/or its counsel argue the court erred in awarding $105,000 in attorney fees to cross-defendants because the fees did not relate to the cross-complaint, Alanic has failed affirmatively to demonstrate error. (*Jameson, supra*, 5 Cal.5th at pp. 608–609; *Denham, supra*, 2 Cal.3d at p. 564; *Keyes, supra*, 189 Cal.App.4th at p. 655.) We conclude the court's award of $105,000 in attorney fees was not an abuse of discretion.[15]

However, Alanic never argued below—as it now does on appeal—that the court should not have awarded sanctions against counsel for conduct that took place after the cross-

---

[15]    Alanic does not argue the court erred by ruling cross-defendants also could recover $9,520.60 in costs against Alanic and its counsel. Accordingly, Alanic has forfeited that issue on appeal. (See *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.) We presume the court's order as to those costs is correct. (*Jameson, supra*, 5 Cal.5th at pp. 608–609.)

29

complaint was filed but before counsel substituted into the action. Rather, at the hearing, Alanic's counsel argued the court should not include counsel in the sanctions order because counsel always had acted in good faith and had advised their clients to act in good faith. That is a decidedly different argument than what Alanic and its counsel make now. Nor did Alanic make any such argument in its opposition to cross-defendants' fee motion. Moreover, nothing in the record indicates Alanic's counsel objected to the proposed order cross-defendants' counsel prepared or suggested the court amend the order to limit the sanctions imposed against counsel to fees incurred after counsel's appearance. Thus, counsel never brought the issue to the court's attention. (See *Peake, supra,* 227 Cal.App.4th at p. 443 [appellant forfeited argument by failing to raise it before the trial court, thus preventing trial court from evaluating the theory as part of its exercise of discretion in ruling on sanctions motion].)

We nevertheless exercise our discretion to consider Alanic's counsel's argument. (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 421, fn. 7 ["Although appellate courts ordinarily will not consider a matter raised for the first time on appeal, whether to apply that rule is largely a question of the appellate court's discretion."].) Although we conclude the trial court did not abuse its discretion in ordering sanctions against Alanic *and* its counsel, we agree that to serve the statute's purpose of deterrence—rather than compensation—the award against counsel should not include attorney fees and costs incurred *before* counsel appeared in this action. (See § 128.7, subd. (d); *Musaelian, supra,* 45 Cal.4th at p. 519.) They logically could not have been "a direct result" of counsel's sanctionable conduct. (§ 128.7, subd. (d) [sanctions may include payment to

30

movant of reasonable attorney fees "incurred as a direct result of the violation"].) (They were a direct result of *Alanic's* sanctionable conduct, however.) We thus remand the matter for the trial court to modify its order accordingly.

## DISPOSITION

We affirm the trial court's September 21, 2023 order awarding attorney fees and costs to cross-defendants Baraness Investments LLC and Sean Baraness as sanctions under section 128.7. We remand the matter to the trial court with directions to modify the order to specify cross-defendants are entitled to recover the stated attorney fees and costs against the Law Offices of Dennis P. Wilson (now known as the Wilson Trial Group) and Law Offices of Deborah Eshaghian only to the extent cross-defendants incurred those fees and costs after counsel appeared in this action. The trial court may hold further proceedings relating to its modification of the order in its discretion.

Respondent Baraness Investments LLC is to recover its costs on appeal from appellant Alanic International Corporation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



ADAMS, J.